# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------  :

UNITED STATES                          :      The Hon. William H. Walls
                                              U.S. District Judge
            v.                         :

DANIEL JENKINS, a/k/a "OD"             :      Civ. No. 15-2091 (WHW)
                                              Crim. No. 13-646 (WHW)
-------------------------------------------------  :
```

---

## RESPONSE OF THE UNITED STATES TO DANIEL JENKINS'S "PETITION PURSUANT TO 28 U.S.C. § 2255"

---

PAUL J. FISHMAN
United States Attorney
970 Broad Street
Newark, NJ 07102

On the Brief:

JOSÉ R. ALMONTE
Assistant U.S. Attorney

## **TABLE OF CONTENT**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS...................................................................................................1

ARGUMENT .........................................................................................................................12

    A.  The Standard.............................................................................................................12

    B.  Jenkins Fails to Establish that his Attorney was Ineffective or that Jenkins Suffered any Prejudice due to his Attorney Not Filing a Notice of Appeal.......................................................14

    C.  Jenkins Fails to Establish that his Attorney was Ineffective or that he Suffered Any Prejudice Just Because Edwards, Jenkins's Co-Defendant, Received a Reduced Sentence .......................18

    D.  There is no Evidence of Ineffective Assistance of Counsel Concerning the Calculation of the Quantity of Narcotics for Which Jenkins was Responsible...........................................21

    E.  No Evidentiary Hearing is Necessary..................................................................22

CONCLUSION.........................................................................................................23

## PRELIMINARY STATEMENT

Petitioner Daniel Jenkins, a/k/a "OD," ("Jenkins") pleaded guilty to narcotics offenses and, thereafter, filed the instant petition, pursuant to Title 28, United States Code, Section 2255, arguing that his attorney was ineffective for three reasons: (1) his attorney did not file a notice of appeal on his behalf; (2) his attorney failed to preserve his right to appeal in the event his co-defendant, who was also represented by the same attorney, cooperated against Jenkins; and (3) his attorney did not independently verify the quantity of narcotics that the government attributed to Jenkins. These arguments have no merit. Therefore, the Court should deny Jenkins's petition.

## STATEMENT OF FACTS

### The Narcotics Transactions

The United States Drug Enforcement Administration ("DEA") conducted an investigation which, in 2012, identified Jenkins, Johnnie K. Edwards ("Edwards"), and others as individuals who sold and facilitated the distribution of phencyclidine, commonly referred to as "PCP," and heroin in Jersey City, New Jersey. As part of the investigation, Jenkins engaged in seven narcotics transactions with an undercover agent and/or a confidential source. Two of those transactions involved Edwards. *See* Presentence Investigation Report dated February 11, 2014 ("PSR") ¶¶ 8-14. In total, Jenkins sold approximately 11.18 grams of PCP and approximately 87.3 grams of heroin to the confidential source and/or undercover agent. Most of the heroin was

packaged in "bricks" and was sufficient to supply more than 3,900 individual doses to drug addicts.[1] *See* Attachment A at 14, 19 (sentencing transcript dated March 11, 2014).

The first transaction for which Jenkins was held accountable took place on or about June 7, 2012. PSR ¶ 8. On that day, Jenkins met with a confidential source and an undercover agent so that he could sell heroin to them.[2] *Id.* In the presence of the undercover agent, Jenkins handed the confidential source five "bricks" of heroin (5.6 grams) in exchange for $920. *Id.*

On or about June 14, 2012, Jenkins again met with the confidential source and the undercover agent to consummate a narcotics transaction. PSR ¶ 9. Jenkins approached the confidential source and the undercover agent, who were in a vehicle that was parked on a street. Jenkins stated that he was sold-out of heroin but that he had PCP. *Id.* Jenkins placed a telephone call to an unidentified male and asked him whether he had any "bricks." *Id.* When Jenkins got off the telephone, he told the confidential source that he had "yams" (raw heroin). *Id.* Shortly thereafter, Edwards, who was standing away from the vehicle, signaled to Jenkins to come to him. *Id.* Jenkins walked over to Edwards, who then handed Jenkins a black plastic bag. *Id.* Jenkins walked back to the vehicle and handed the confidential source the black plastic bag. *Id.* The bag contained 6.4 grams of PCP (actual). *Id.* Jenkins also told the confidential source that the "yams" were on their way. *Id.* Minutes later, another individual handed Jenkins a clear plastic bag, which Jenkins turned over to the confidential source. *Id.* This second plastic bag

---

[1] A "brick" is a street term that refers to 50 individual doses of heroin. Each dose is packaged in individual glassine envelopes so that they can be distributed to end-users. Here, Jenkins sold to the confidential source and/or undercover agent 78 bricks of heroin, approximately 3,900 individual doses. Attachment A at 14, 19. That amount does not even include an additional 8.2 grams of heroin which Jenkins sold to the undercover agent in unpackaged form. PSR ¶ 8.

[2] All the narcotics transactions referenced in this brief took place in Jersey City, New Jersey.

contained about 8.2 grams of heroin. *Id.* The confidential source paid Jenkins approximately $1,775 for both transactions.

Jenkins met with the undercover agent again on or about June 26, 2012. The undercover agent bought from Jenkins approximately 4.2 grams of PCP (actual) and approximately 12.2 grams of heroin, in exchange for $2,650. PSR ¶ 10.

On or about July 18, 2012, Jenkins met with the undercover agent on a street in Jersey City. PSR ¶ 11. During that meeting, the undercover agent asked Jenkins for heroin. *Id.* Jenkins asked him to stand by and immediately walked into a barbershop that was in the vicinity. *Id.* Edwards came out of the same barbershop and drove to another location nearby. *Id.* In the meantime, Jenkins returned to the street to speak with the undercover agent. *Id.* After Edwards returned to the barbershop, Jenkins went inside and immediately came back out with 14 bricks of heroin, which he sold to the undercover agent for $2,660. *Id.* The 14 bricks of heroin weighed approximately 15.8 grams. *Id.*

On or about July 23, 2012, Jenkins met with the undercover agent to sell to the undercover agent approximately 0.58 grams of PCP (actual). In exchange, the undercover agent paid Jenkins $800. PSR ¶ 12.

On or about August 29, 2012, the undercover agent attempted to meet with Jenkins at the same barbershop referenced above, but one of Jenkins's co-conspirators told the undercover agent that Jenkins was unavailable. PSR ¶ 13. When the undercover agent told the co-conspirator that the undercover agent was looking for "15," the co-conspirator asked, "grams or bricks?" *Id.* The undercover agent clarified that he/she wanted 15 bricks, at which point the co-conspirator agreed that he would let Jenkins know. *Id.* A few minutes later, Jenkins spoke to the undercover agent over a telephone. Jenkins agreed to sell 15 bricks of heroin to the undercover

3

agent. *Id.* At Jenkins's request, the undercover agent drove to a different location where the undercover agent was met by an unidentified male who gave the undercover agent the 15 bricks of heroin, in exchange for $3,650. The weight of the heroin was 18.3 grams. *Id.*

Finally, on or about September 10, 2012, Jenkins met with the undercover agent and sold to the undercover agent 31 bricks of heroin. PSR ¶ 14. In exchange, the undercover agent paid Jenkins $6,350. *Id.* The weight of the heroin was 27.2 grams. *Id.*

All the narcotics obtained in this case were tested at a DEA laboratory. The laboratory issued reports setting forth its findings concerning the type of narcotics that it analyzed and the weight of such substances, among other things. The government produced copies of those reports to Jenkins's counsel on or about April 30, 2013, prior to Jenkins entering a plea of guilty. *See* Attachment B (copy of a cover letter addressed to defense counsel, along with a copy of the reports that are relevant to this brief). The net weight of the heroin and the actual weight of the PCP did not include the packaging material, as instructed by the United States Sentencing Guidelines. *See* U.S.S.G. § 2D1.1, Notes A and B. The total quantity of narcotics that Jenkins sold to the undercover agent and/or confidential source was 87.3 grams of heroin and 11.18 grams of PCP, as summarized in the chart below. [3]

---

[3] The PSR stated that the heroin in this case weighed 89.6 grams. PSR ¶ 15. The PSR reached that conclusion because it incorporated a transaction that occurred on or about May 31, 2012, involving 1.9 grams of heroin, but which the parties did not contemplate in the plea agreement. *Id.* ¶ 7. In addition, the PSR erroneously stated that the transaction from June 14, 2012, involved 8.6 grams. *Id.* ¶ 9. A review of the laboratory report revealed that the amount of heroin obtained that day was 8.2 grams, which is what the parties contemplated in the plea agreement. Regardless of whether the amount of heroin was 89.6 grams or 87.3 grams, Jenkins's offense level of 31 remains the same. Therefore, the additional 2.3 grams of heroin that the PSR attributed to Jenkins did not alter his sentencing exposure.

| Date of Transaction | Heroin | PCP (actual) | Participants[4] |
|---|---|---|---|
| 6/7/12 | 5.6 grams | | Jenkins |
| 6/14/12 | 8.2 grams | 6.4 grams | Jenkins (PCP and heroin) and Edwards (only PCP) |
| 6/26/12 | 12.2 grams | 4.2 grams | Jenkins |
| 7/18/12 | 15.8 grams | | Jenkins and Edwards |
| 7/23/12 | | 0.58 grams | Jenkins |
| 8/29/12 | 18.3 grams | | Jenkins |
| 9/10/12 | 27.2 grams | | Jenkins |
| **TOTAL** | **87.3 grams** | **11.18 grams** | |

## The Conflict-of-Interest Hearings

On September 12, 2012, the government charged Jenkins, Edwards, and others by complaint with conspiracy to distribute and to possess with intent to distribute heroin and PCP, contrary to Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) & 841(b)(1)(C), in violation of Title 21, United States Code, Section 846.   Initially, each defendant was represented by his own separate attorney.   Then, on or about January 8, 2013, Michael V. Gilberti, Esq., ("Gilberti") filed a substitution of attorney to represent Jenkins.   *See* Mag. No. 12-3180, Docket Entry No. 45.   On or about January 15, 2013, the criminal docket was updated to reflect that Gilberti also represented defendant Edwards.   *See id.* (Docket No. Not Available).

The government alerted Gilberti and the Court of the potential conflict of interest that could arise from Gilberti's dual representation.   Jenkins twice waived his right to be represented by a conflict-free attorney.   First, on or about February 20, 2013, the Honorable Patty Shwartz, then-U.S. Magistrate Judge for the District of New Jersey, held a conflict-of-interest hearing, during which Her Honor advised Jenkins and Edwards of their right to be represented by a conflict-free attorney.   Both defendants knowingly and voluntarily waived potential conflicts of interest and expressed their desire to be represented by Gilberti.   *See* Mag. No. 12-3180, Docket

---

[4] This column lists only Jenkins and Edwards, although other individuals may have been involved as well.

No. 52. Second, on or about October 29, 2013, prior to Jenkins entering a guilty plea in this case, this Court questioned Jenkins extensively to ensure that his decision to waive the conflict of interest was knowing and voluntary. *See* Attachment C at 6-11 (transcript of the plea hearing dated October 29, 2013). Jenkins assured this Court that he understood that he was waiving his rights and that he wished for Gilberti to represent him, notwithstanding that Gilberti also represented Edwards. *Id.* The Court found that Jenkins knowingly and voluntarily waived his right to be represented by a conflict-free attorney. *Id.* at 10-11, 32-33.

### The Guilty Plea

On or about October 1, 2013, the Grand Jury sitting in Newark, New Jersey, returned a nine-count Indictment against Jenkins in connection with the narcotics transactions described above. Crim. No. 13-646. By then, Edwards had already informed the government that he wished to enter a guilty plea; therefore, the government did not seek an indictment against Edwards. Instead, on or about October 29, 2013, the government allowed Edwards to enter a guilty plea to an Information, which charged him with conspiracy to distribute and possess with intent to distribute a quantity of heroin and PCP, in violation of 21 U.S.C. § 841(b)(1)(C), in violation of 21 U.S.C. § 846. *See* Crim. No.13-715 (WHW), Docket No. 64.

Also on or about October 29, 2013, Jenkins entered a guilty plea to Count One of the Indictment (conspiracy to distribute and possess with intent to distribute a quantity of heroin and PCP, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 841(b)(1)(C), in violation of 21 U.S.C. § 846). Jenkins entered his plea of guilty pursuant to the terms of a plea agreement dated October 3, 2013 (hereinafter, the "Plea Agreement," which is annexed hereto as Attachment D). The Plea Agreement left open the issue of whether Jenkins was a career offender, as defined by section 4B1.1 of the United States Sentencing Guidelines. Specifically, the parties agreed that if the

6

Court found that Jenkins was a career offender at sentencing, his total offense level would be 31 and his criminal history category automatically would be VI, resulting in an advisory Guidelines range of 188 to 235 months' imprisonment. *See* Attachment D at 8-9; PSR ¶ 150.  If, on the other hand, the Court found that Jenkins was not a career offender, his total offense level would be 23, and the United States Probation Office would determine his criminal history category. *See* Attachment D at 8-9.  Because the United States Probation Office found that Jenkins's criminal history category was V, PSR ¶ 102, the advisory Guidelines range for Jenkins would have been 84 to 105 months, prior to the application of the career offender category.

The government made certain concessions in the Plea Agreement in exchange for Jenkins's waiver of certain rights, including his right to appeal and challenge his sentence. Specifically, the government agreed to move to dismiss counts two through nine of the Indictment pending against Jenkins, and to not initiate any further criminal charges against Jenkins for knowingly and intentionally conspiring and agreeing with others to distribute and possess with intent to distribute 10 grams or more of PCP and a quantity of heroin from on or about May 31, 2012, through on or about September 13, 2012, in the District of New Jersey. *Id.* at 1.  The government also agreed to a number of sentencing concessions, including an agreement to not seek a sentence outside of the stipulated Guidelines range, an agreement for a reduced sentence on the basis of acceptance of responsibility, and a further one-point reduction for a timely acceptance of responsibility. *Id.* at 7 ¶ 1, 8 ¶ 9.  In return for these concessions, Jenkins "waive[d] certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." *Id.* at 4.  Specifically, Jenkins stipulated and agreed as follows:

> Daniel Jenkins knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other

7

writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a
motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the
sentencing court if that sentence falls within or below the Guidelines range that
results from a total Guidelines offense level of 31.... The provisions of this
paragraph are binding on the parties even if the Court employs a Guidelines
analysis different from that stipulated to herein. Furthermore, if the sentencing
court accepts a stipulation, both parties waive the right to file an appeal, collateral
attack, writ, or motion claiming that the sentencing court erred in doing so.

Attachment D at 9 ¶ 12.[5] The government reciprocally agreed not to appeal the sentence if it

resulted from offense level 23 or above. *Id.*

Jenkins attested that he had received the Plea Agreement from his attorney, that he read

it, and that he understood it fully. *Id.* at 6. He further attested that "I hereby accept the terms

and conditions set forth in this letter and acknowledge that it constitutes the plea agreement

between the parties." *Id.* The agreement also acknowledged that "no additional promises,

agreements, or conditions have been made or will be made unless set forth in writing and signed

by the parties." *Id.*

During the guilty plea colloquy, this Court again informed Jenkins of, and ensured that he

understood, the terms of his plea agreement provision waiving his right to appeal. Attachment C.

at 23-25; see Fed. R. Crim. P. 11(b)(1)(N).

**The Sentencing Hearing**

At the sentencing hearing, which was held on or about March 11, 2014, the parties

disputed whether Jenkins should be sentenced as a career offender. The Court found that Jenkins

satisfied the definition of career offender, thereby making his Guidelines range 188 to 235

months' imprisonment. Attachment A at 29. After carefully considering Jenkins's extensive

---

[5] The only exception was that "[t]he parties reserve any right they may have under 18 U.S.C. § 3742 to
appeal the sentencing court's determination of the criminal history category." *Id.* At the sentencing hearing, Jenkins
conceded that the calculation of his criminal history category was correct. Attachment A at 9.

criminal history, the many opportunities that other courts had given to Jenkins, and other factors, the Court declined to depart from the advisory Guidelines range. *Id.* at 2-29, 34-36. The Court sentenced Jenkins to 188 months, the bottom of the Guidelines range. *Id.* at 37.

The same day, the Court also sentenced Edwards. Unlike Jenkins, Edwards did not qualify as a career offender. The Court found that Edwards's offense level was 19, which is what the parties had stipulated to in a plea agreement. *See* Attachment E (plea agreement between Edwards and the government) at 8 ¶ 11. Like the plea agreement with Jenkins, the plea agreement with Edwards permitted Edwards to challenge his criminal history. He did. Edwards argued that his criminal history category of V, which was determined by the United States Probation Office, overstated the seriousness of his prior convictions. The Court agreed with Edwards and found that his criminal history category should be decreased to category IV (the offense level remained unchanged). The resulting Guidelines range was 46 to 57 months' imprisonment. The Court sentenced him to 48 months' imprisonment. *See* Crim. No. 13-715, Docket No. 72.

### The Third Circuit Appeal

On or about March 12, 2014, one day following his sentencing hearing, Jenkins submitted a *pro se* notice of appeal in the form of a letter. *See* Attachment F. In that letter, Jenkins stated that he had "not secured appellate counsel." *Id.* On or about April 7, 2014, the Office of the Clerk of the United States Court of Appeals for the Third Circuit sent Gilberti a letter, advising him that he was being appointed as Jenkins's counsel under the provisions of the Criminal Justice Act. Attachment G. The letter further advised Gilberti to file certain forms, including a notice of appearance and a "Transcript Purchase Order" within fourteen days. *Id.*

On April 22, 2014, the Office of the Clerk again advised Gilberti that he needed to submit certain forms and enter a notice of appearance. Attachment H.

On April 28, 2014, Gilberti responded to the Office of the Clerk, clarifying that he did not represent Jenkins. Specifically, Gilberti wrote:

> I represented Mr. Jenkins in the underlying case, which resulted in a guilty plea under a negotiated plea agreement. In the plea agreement, Mr. Jenkins waived his right to appeal. Nonetheless, after his sentencing, Mr. Jenkins filed his notice of appeal *pro se*, and based on communications from him and his family, it was my understanding that he would be proceeding *pro se*.
>
> After we received the call, assigning us as CJA counsel for Mr. Jenkins, I went back to the file and reviewed the plea agreement ant its waiver language. As the attorney who negotiated the plea and based upon the Court Rules and ethical considerations, I am reluctant to take action contrary to the agreement, including filing [a notice of] appearance.

Attachment I.

Notwithstanding Gilberti's reluctance to represent Jenkins, the Third Circuit ordered him to enter an appearance, which he did on or about June 2, 2014. Attachments J and K.  Between on or about May 30, 2014, and on or about July 1, 2014, there were various communications between the Office of the Clerk and Gilberti, primarily concerning the Third Circuit's request that Gilberti file certain forms, such as the transcript purchase order form.  On July 28, 2014, the Third Circuit issued an order directing Gilberti to show cause as to why he had not ordered the transcripts of the underlying case.[6] Attachment L.  On or about August 8, 2014, Gilberti wrote a letter to the Office of the Clerk, in which he advised the Third Circuit that Jenkins, through his brother, was emphatic that Gilberti was not his attorney for purposes of the appeal and that the

---

[6] The Order to Show Cause was ultimately discharged on or about October 2, 2014, without Gilberti having to appear before a Hearing Officer. *See* Attachment M.

family had purchased the transcripts. Attachment N.  On or about September 4, 2014, the Third

Circuit issued an order referring the matter to a Third Circuit Judge to determine what action

would be appropriate. Attachment O.  The next day, September 5, 2014, Gilberti wrote a letter

to the Office of the Clerk to reiterate that Jenkins "waived his right to appeal" and to clarify

certain issues, including that Jenkins was claiming that Gilberti was ineffective in his

representation before this Court, thereby creating a conflict that barred Gilberti from representing

Jenkins on appeal. Attachment P.

On or about September 11, 2014, the government filed a motion seeking to enforce the

waiver provision in the Plea Agreement between Jenkins and the government because Jenkins

had been sentenced within the offense level which both parties agreed was reasonable, offense

level 31.  On or about September 29, 2014, Jenkins filed a "Motion to Dismiss and Appoint New

Counsel," asking for, among other things, that Gilberti be relieved as his attorney. Attachment Q.

On or about October 2, 2014, the Third Circuit issued an order permitting Jenkins to proceed *pro*

*se* and to file a response to the government's motion. Attachment R.  Jenkins filed a response *pro*

*se* on or about October 23, 2014. Attachment S.  The Third Circuit issued an order on or about

December 9, 2014, summarily granting the government's motion to enforce the appellate waiver

in the Plea Agreement, thereby barring Jenkins's appeal. Attachment T.

### The Present Petition

On or about March 24, 2015, Jenkins filed this petition seeking habeas relief, pursuant to

28 U.S.C. § 2255, arguing that his attorney was ineffective for three reasons.  One of the reasons

that Jenkins advances is that his counsel was ineffective because he did not file a timely notice of

appeal on Jenkins's behalf and did not file a brief claiming that there were no non-frivolous

claims to be filed.  In addition, Jenkins claims that his attorney was ineffective by not explaining

to him that he "was waiving the right to appeal if Edwards was allowed any benefit contrary to what was advised by counsel and the [C]ourt." Def. Br. at 9. The last reason why Jenkins's attorney was ineffective, according to Jenkins, is because his attorney allegedly negotiated a plea agreement without first determining the correct drug quantity that Jenkins sold in this case. Each of these allegations is addressed below. Because none of Jenkins's claims has merit, this Court should deny Jenkins's motion without an evidentiary hearing.

## ARGUMENT

### A. The Standard

Section 2255 permits federal prisoners to "challenge their convictions or sentences that are allegedly in violation of the Constitution." *United States v. Okereke*, 307 F.3d 117, 120 (3d Cir. 2002). "[R]elief under § 2255 is available only when 'the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice' and . . . 'present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citations omitted) (second alteration in the original).

The United States Supreme Court established the standard by which claims of ineffective assistance of counsel should be analyzed. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show constitutionally ineffective assistance of counsel, petitioner must meet a two-part test: that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687. With regard to the first part, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the petitioner by the Sixth Amendment." *Id.* In assessing counsel's performance, the reviewing

12

court must be "highly deferential," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689 (citation and internal quotation omitted). It is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989). As to the prejudice component, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not consider whether a counsel's alleged errors were constitutionally deficient, if a petitioner cannot show prejudice. Rather, if a court finds that a petitioner cannot satisfy the prejudice component of this analysis, it may dismiss a claim of ineffective assistance without considering the performance component. *Id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Moreover, as this Court recognized, "[s]ince the defendant's § 2255 petition is a collateral attack, he 'must clear a significantly higher hurdle than would exist on direct appeal' in order to obtain relief." *Ware v. United States*, Civ. No. 12-7086, 2014 WL 1407723, at *6 (D.N.J. Apr. 11, 2014) (citations omitted) (Walls, J.). This Court also recognized that "where the defendant was convicted as a result of his guilty plea, his § 2255 motion must be limited to an attack on his plea and/or the assistance of his counsel provided in connection with that plea." *Id.*

(citations omitted). Similarly, "where a defendant executes a waiver, that waiver is binding unless the defendant states an ineffective-assistance-of-counsel claim that relates, specifically, to counsel's performance in connection with that waiver." *Id.* (citations omitted).

### B. Jenkins Fails to Establish that his Attorney was Ineffective or that Jenkins Suffered any Prejudice due to his Attorney Not Filing a Notice of Appeal

Jenkins alleges that he should be granted relief under Section 2255 because his attorney failed to file a notice of appeal, thereby prejudicing him. The government does not dispute that Gilberti did not file a notice of appeal on behalf of Jenkins. But the analysis does not end there. As explained below, Jenkins's claim must fail because he has not demonstrated that his attorney was ineffective or that he suffered any prejudice.

"With regard to objectively reasonable representation, counsel has 'a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" *Solis v. United States*, 252 F.3d 289, 293 (3d Cir. 2001) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). "Regarding prejudice, the Supreme Court held that "'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.'" *Id.* (citing *Flores-Ortega*, 528 U.S. at 484, 120 S.Ct. 1029). "Prejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." *Id.* at 294-95 (citations omitted).

The rule articulated in *Flores-Ortega* and in *Solis* is not without exception. The Third Circuit explained that

14

where there is a total appellate and collateral waiver, "counsel's duty to protect his or her client's interest militates against filing an appeal" which could cost the client the benefit of the plea bargain against his or her best interest. . . . ("Sometimes demanding that one's lawyer appeal is like demanding that one's doctor perform surgery, when the surgery is risky and has an extremely low likelihood of improving the patient's condition."). Thus, there is no reason to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement, relieving the government of its obligations as well.

*United States v. Mabry*, 536 F.3d 231, 240-41 (3d Cir. 2008) (internal citations omitted).

The exception articulated in *Mabry* applies with equal force here. Jenkins entered into a Plea Agreement with the government in which he knowingly and voluntarily waived his right to appeal. Attachment D at 9 ¶ 12. In exchange for pleading guilty and waiving his right to appeal, the government agreed to move to dismiss counts two through nine of the Indictment pending against Jenkins, and to not initiate any further criminal charges against Jenkins in connection with his narcotics trafficking from on or about May 31, 2012, through on or about September 13, 2012, in the District of New Jersey. *Id.* at 1. The government also conceded certain sentencing issues, including that it would not seek a sentence outside of the Guidelines range and that it would agree that Jenkins was entitled to a reduced sentence for timely acceptance of responsibility. *Id.* at 7 ¶ 1, 8 ¶ 9.

At sentencing, this Court found that Jenkins's offense level was 31, the same offense level that triggered Jenkins's waiver of his right to appeal. Attachment A at 29. The Guidelines range that resulted from that offense level, using Jenkins's criminal history category of VI, was 188 to 235 months. *Id.* at 2. The Court sentenced Jenkins to 188 months' incarceration, the bottom of the Guidelines range. *Id.* at 37. Accordingly, Jenkins's sentence was within "the

Guidelines range that results from a total Guidelines offense level of 31." Attachment D at 9,

¶ 12. Jenkins had agreed not to appeal such a sentence. *Id.*

Against this backdrop, Jenkins claims that his attorney was ineffective for not filing a notice of appeal on his behalf. Jenkins's attorney, however, recognized that he could not file such a notice. In Gilberti's own words:

> I represented Mr. Jenkins in the underlying case, which resulted in a guilty plea under a negotiated plea agreement. In the plea agreement, Mr. Jenkins waived his right to appeal. Nonetheless, after his sentencing, Mr. Jenkins filed his notice of appeal pro se, and based on communications from him and his family, it was my understanding that he would be proceeding *pro se.*
>
> After we received the call, assigning us as CJA counsel for Mr. Jenkins, I went back to the file and reviewed the plea agreement ant its waiver language. As the attorney who negotiated the plea and based upon the Court Rules and ethical considerations, I am reluctant to take action contrary to the agreement, including filing [a notice of] appearance.

Attachment I.

The content of Gilberti's letter make it clear that he did not represent Jenkins for purposes of filing an appeal on Jenkins' behalf. Additionally, when Jenkins submitted the notice of appeal *pro se,* one day after being sentenced, he confirmed that he had "not secured appellate counsel." Attachment F. These communications show that the attorney-client relationship had ended at that point.[7] In *United States v. Jeffries,* 73 Fed. App'x. 535, 536-37 (3d Cir. 2003), the Third Circuit held that an attorney who did not file a notice of appeal was not deficient, because the defendant had not directed the attorney to appeal his conviction. By analogy, Gilberti cannot be deemed ineffective for not filing a notice of appeal when he did not even represent the defendant at the time.

---

[7] As stated above, the Third Circuit ordered Gilberti to represent Jenkins on appeal, after Jenkins had already filed the notice of appeal *pro se.* Thereafter, Jenkins requested that Gilberti be relieved as counsel, and Jenkins ultimately proceeded *pro se.*

And even if there was a miscommunication between Gilberti and Jenkins concerning continued representation for purposes of appeal, it is clear that Gilberti recognized that the Plea Agreement barred Jenkins from filing an appeal.  As in *Mabry*, counsel here recognized that his "duty to protect his . . . client's interest militate[d] against filing an appeal."  *Mabry* 536 F.3d at 240.  The waiver provision in the Plea Agreement not only barred Jenkins from filing an appeal, but also exposed him to the danger that the government could ask the Court to find that he has breached the agreement.  The Third Circuit recently held that a defendant, who executed a plea agreement with a waiver provision identical to the one that Jenkins executed, breached the plea agreement when he filed an appeal which was not authorized by the plea agreement.  *Compare United States v. Erwin*, 765 F.3d 219, 224 (3d Cir. 2014) *with* Attachment D at 4, 9 ¶ 12.  The Third Circuit relieved the government of its obligations under the plea agreement and cooperation agreement and remanded the case for resentencing to permit the government to seek a higher sentence against the defendant.  *Erwin*, 765 F.3d at 232.  Under these circumstances, it cannot be said that Gilberti was ineffective for not filing a notice of appeal.

Nor can it be said that Jenkins suffered any prejudice as a result of Gilberti not filing a notice of appeal.  The Third Circuit already decided that the waiver provision in the Plea Agreement was enforceable and, therefore, Jenkins cannot appeal his sentence or conviction. *See* Attachment T.  If Gilberti had filed a notice of appeal on Jenkins's behalf, the result would have been the same.

Nonetheless, Jenkins seeks a remedy which this Court cannot prescribe.  Even if Gilberti represented Jenkins from the inception of the appellate process and Gilberti had been deficient in filing a notice of appeal, the only viable remedy would have been to permit Jenkins to proceed with an appeal. *See, e.g.*, *United States v. Allen*, 85 Fed. App'x. 313, 315 (3d Cir. 2004)

(remanding case so that the district court could determine whether the attorney failed to act on the defendant's request to file a notice of appeal and, if so, instructing the district court to re-sentence the defendant so that he can proceed with an appeal). But Jenkins already filed his appeal. And the Third Circuit barred it. There is no relief available for Jenkins.

### C. Jenkins Fails to Establish that his Attorney was Ineffective or that he Suffered Any Prejudice Just Because Edwards, Jenkins's Co-Defendant, Received a Reduced Sentence

According to Jenkins, his "counsel was ineffective for not protecting Petitioner's rights to appeal if Edwards['s] sentence was considered on any factors [premised] on cooperation, on any level, other than pleading to the charged offense in the order set forth in the indictment or information. The omission of the preserved right to appeal was critical and allowed Edwards to mitigate his role in the charged offense without Petitioner having any protection against Edwards potential misleading or totally fabricat[ing] assertions through mitigation or cooperation. Edwards received a benefit during his negotiation and sentencing, therefore the oral stipulation of the written agreement was breached." Def. Br. at 7-8.

Because Jenkins is proceeding *pro se*, this argument must be "construed liberally," *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir.1998), and explained in context. It appears that the gravamen of Jenkins's claim is that Edwards received a lower sentence than what Jenkins thought Edwards should have received. In support of that argument, Jenkins asserts that there was a breach of an "oral stipulation of the written agreement." That appears to be a reference to a colloquy with this Court during the conflict-of-interest hearing, which took place just before Jenkins entered a guilty plea. During the conflict-of-interest hearing, this Court asked Jenkins (and Edwards, separately), "do you understand that having one attorney representing you and your co-defendant, it may be unlikely that you will be able to receive a benefit of cooperation;

18

that is, a reduced sentence?" Attachment C at 8. Jenkins responded, "Yes." *Id.* Based on the exchange with this Court, as well as alleged conversations with Gilberti, Jenkins understood that if Edwards cooperated against Jenkins, Gilberti would be conflicted out of the case. Def. Br. at 5-7. Jenkins then asserts that Edwards must have cooperated because Edwards's sentence was lower than what was contemplated in Edwards's plea agreement. Def. Br. at 7. It is in this context that Jenkins claims that his attorney was ineffective for not preserving his right to appeal in the event that Edwards breached the "agreement" and cooperated against him. Def. Br. at 7-10.

Jenkins's claim is fundamentally flawed, both factually and legally. First, as a threshold matter, Jenkins makes bald allegations but cannot point to any evidence that Edwards cooperated against him. Therefore, he fails to establish that there was a conflict of interest in this case that caused him any prejudice.

Second, it is unclear how Jenkins was prejudiced by Edwards's sentence. The government is not aware of any instance in which a defendant's right to appeal hinges on the outcome of a co-defendant's sentence. The jurisprudence in the Third Circuit is clear: a defendant cannot claim ineffective assistance of counsel on the basis that the attorney's prediction of the defendant's **own** sentence was incorrect. *See United States v. Hampton*, 444 Fed. App'x. 583, 587 (3d Cir. 2011) (citing *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (holding that "counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion").[8] Logic dictates that if

---

[8] Here, the Plea Agreement expressly provided that the agreement between the parties was not binding on this Court, that Jenkins faced a maximum sentence of 40 years' imprisonment, and that the sentence was "within the sole discretion of the sentencing court." Attachment D at 2.

Jenkins cannot claim ineffective assistance of counsel because his attorney failed to accurately predict Jenkins's own sentence, it then follows that Jenkins cannot claim ineffective assistance of counsel on the basis that Edwards received a lighter sentence than what, perhaps, Jenkins wanted Edwards to receive or perhaps what Gilberti had predicted.

To be sure, a defendant could argue on appeal that there was a sentencing disparity between his sentence and a co-defendant's sentence. To the extent that that is the argument that Jenkins intended to advance, he cannot prevail. Jenkins waived his right to appeal if he was sentenced within offense level 31. He was. Jenkins received the benefit of the Plea Agreement and, therefore, was barred by the Third Circuit from appealing his sentence. But, even absent the enforcement of the waiver provision, that claim also would fail on the merits. That is particularly so because comparing Edwards to Jenkins would be akin to comparing the proverbial "apples to oranges."

The evidence against Edwards with respect to transactions involving Jenkins was limited to a transaction on June 13, 2012, and a transaction on July 18, 2012, resulting in a total of 6.4 grams of PCP and 15.8 grams of heroin.[9] Jenkins, on the other hand, was involved not only in those transactions but also in five additional ones. Cumulatively, Jenkins was responsible for 11.18 grams of PCP and approximately 87 grams of heroin. Jenkins was therefore responsible for a greater amount of narcotics than Edwards and, consequently, their offense levels had to be different.

Moreover, the Court deemed Jenkins's criminal history substantially worse than Edwards's criminal history. Jenkins cannot dispute – nor does he – that he qualified as a career

---

[9] There is one other transaction in which Edwards may have been involved with another individual; however, that transaction was not factored in the plea agreement with Edwards.

offender. In contrast, Edwards was not a career offender; his criminal history was IV, after the Court found that his criminal history had been overstated.

Jenkins does not advance any argument that would support a claim that there was a breach of an "agreement," a conflict which he did not waive, or an appellate right which his attorney should have preserved. Nothing in the record explains how Jenkins was prejudiced just because Edwards received a reduced sentence. Jenkins's claims should therefore fail.

**D. There is no Evidence of Ineffective Assistance of Counsel Concerning the Calculation of the Quantity of Narcotics for Which Jenkins was Responsible**

Jenkins claims that his attorney was ineffective because his attorney did not conduct an independent investigation to determine whether the weights set forth in the laboratory reports were accurate. Def. Br. at 10-12. Jenkins has not cited to, and the government has not located, any binding or persuasive legal authority that requires defense counsel to hire an expert in order to verify the content of the DEA's laboratory reports.

The fact is that the government provided copies of the laboratory reports to defense counsel, prior to Jenkins entering a guilty plea. *See* Attachment B. The Plea Agreement specifically listed the amounts reflected in the laboratory reports. *See* Attachment D at 7 ¶¶ 3-6. Jenkins cannot dispute that the amount of narcotics attributed to him, as set forth in the laboratory reports, are the exact amounts that are reflected in the Plea Agreement. To the extent Jenkins was concerned about the quantities reflected in those documents, he could have raised that concern before or at the plea hearing. He did not. He could have also raised that concern before or at the sentencing hearing. He did not. He raised that concern for the first time only after he received a sentence which he dislikes. Jenkins "can neither litigate nor re-litigate *de facto* direct appellate challenges by simply dressing them 'in different legal garb[s],' e.g., by

stitching them to the performance of defense counsel through self-serving, bold assertions.'" *Sellers v. United States*, Civ. No. 14-388, 2014 WL 340598, at *2 (D.N.J. Jan. 30, 2014) (Bumb, J.) (citation omitted). His claim should therefore be denied.

### E. No Evidentiary Hearing is Necessary

An evidentiary hearing is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Third Circuit has made clear that if, "on the existing record, those claims that are non-frivolous conclusively fail to show ineffective assistance of counsel," that is, "[i]f a non-frivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the petitioner, then the claim does not merit a hearing." *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988) (emphasis added); *see id.* at 930-31 (finding no hearing required on numerous claims); *see also Kaplan v. United States*, Civ. No. 13-5295, 2015 WL 1268194, at *3 (D.N.J. Mar. 18, 2015) (Irenas, J.) (citing *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) ("If the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner, and/or indicate that petitioner is not entitled to habeas relief as a matter of law, no evidentiary hearing is required."). As demonstrated herein, Jenkins's allegations are frivolous and do not merit a hearing in light of the record before the Court. To the extent that the Court requires additional information, the government respectfully requests the opportunity to supplement its response.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court issue an order denying Jenkins's petition.  Because Jenkins has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), this Court should find that a certificate of appealability should not be issued in this case.  *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000) (certificate of appealability should only be issued where a petitioner has shown "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By: José R. Almonte
Assistant U.S. Attorney

Newark, New Jersey
Date: May 15, 2015

23