# ATTACHMENT A

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 2 of 41 PageID: 69
Case: 14-1825   Document: 003111735933   Page: 57   Date Filed: 09/11/2014

1

1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
2                    Criminal No. 2:13-cr-646-WHW

3

4    UNITED STATES OF AMERICA,    :
                                  :    TRANSCRIPT OF PROCEEDINGS
5           v.                    :       - Sentencing Hearing -
                                  :
6    DANIEL JENKINS,              :
                                  :
7           Defendant.            :
     - - - - - - - - - - - - - -

8

9                              Newark, New Jersey
                               March 11, 2014
10

11   B E F O R E:

12                    THE HONORABLE WILLIAM H. WALLS,
                      UNITED STATES DISTRICT JUDGE
13

14   A P P E A R A N C E S:

15        UNITED STATES ATTORNEY'S OFFICE
          BY:   JOSE ALMONTE
16              Assistant U.S. Attorney
          For the Government
17
          MICHAEL V. GILBERTI, ESQ.
18        For the Defendant

19

20   Pursuant to Section 753 Title 28 United States Code, the
     following transcript is certified to be an accurate record as
21   taken stenographically in the above entitled proceedings.

22
     S/WALTER J. PERELLI
23

24
     WALTER J. PERELLI, CCR, CRR
25   Official Court Reporter

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 3 of 41 PageID: 70
Case: 14-1825   Document: 003111735933   Page: 58   Date Filed: 09/11/2014

2

1           THE COURT:  Today is the scheduled sentence day for
2   Daniel Jenkins.
3           Enter your appearances.
4           The rest of you may be seated.
5           MR. ALMONTE:  Good morning, your Honor.  Assistant
6   United States Attorney Jose Almonte, on behalf of the
7   Government.
8           MR. GILBERTI:  Good morning, your Honor.  Michael
9   Gilberti on behalf of Mr. Jenkins, who is standing to my left.
10          THE COURT:  And tell me, Counsel, has your client read
11  and reviewed the Presentence Investigation Report?
12          MR. GILBERTI:  Yes, he has.
13          THE COURT:  And as I understand and read, according to
14  the Sentencing Guidelines, there is an offense level of 31 with
15  a Criminal History Category of VI, which exposes your client to
16  custody between 188 to 235 months.  Do you challenge that?
17          MR. GILBERTI:  Yes, we have, your Honor.
18          THE COURT:  Come to the lectern and let me hear from
19  you on his behalf.
20          You may be seated, sir.
21          MR. GILBERTI:  Your Honor, we make really two
22  challenges.  His plea agreement, the underlying offense was a
23  Level 23, Criminal History V.  And we kept open the ability to
24  challenge the possibility that the Probation office would find
25  him as a career offender.

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 4 of 41 PageID: 71
Case: 14-1825    Document: 003111735933    Page: 59    Date Filed: 09/11/2014

3

1           What we have here, your Honor, is the career

2     offender -- you have discretion whether or not to rule that

3     he's a career offender.  And in this case, your Honor, what we

4     have here is, we're in an era where Congress is conducting

5     hearings on the Draconian results of drug sentencing over the

6     years.  And in this case, your Honor, the Government wants to

7     sentence him to 188 to 235 months -- that's 16 and a half to 20

8     years -- for a criminal history that includes less than a pound

9     of drugs.  In fact, it's probably less than a half a pound.

10          THE COURT:  Wait, stop, stop.  Slow, slow so that we

11    can make sure that you and I are on the same page as well as

12    the Assistant United States Attorney.

13          I just want to make sure that -- your client, as I

14    understand it, is 40 years of age?

15          MR. GILBERTI:  Yes, your Honor.

16          THE COURT:  Is that correct?

17          MR. GILBERTI:  That's correct, your Honor.

18          THE COURT:  Okay.  And now, turning to page -- page 12

19    of the Presentence Investigation Report.

20          MR. GILBERTI:  I have it, your Honor.

21          THE COURT:  And we'll run over what are juvenile

22    matters.  Okay.

23          MR. GILBERTI:  Hang on a second, your Honor.

24          THE COURT:  And that takes us up to page 15.  Right?

25          MR. GILBERTI:  Correct.

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 5 of 41 PageID: 72
Case: 14-1825   Document: 003111735933   Page: 60    Date Filed: 09/11/2014

4

1            THE COURT:  Am I right so far?

2            MR. GILBERTI:  Yes, you are.

3            THE COURT:  All right.

4            MR. GILBERTI:  Correct.

5            THE COURT:  Now we get to paragraph 58, we have a

6    conviction for fraud.  Right?

7            MR. GILBERTI:  Correct.

8            THE COURT:  We go to paragraph 60 -- by the way, that

9    is in November of 1991 when he was age 18.  Then we go to page

10   16, and at the age of 19, in March of 1993 he's found guilty of

11   receiving stolen property by the New Jersey Municipal Court.

12   Is that correct?

13           MR. GILBERTI:  Correct.

14           THE COURT:  Then we go to November of 1993, in the

15   Superior Court of New Jersey in Hudson County vicinage, he's

16   convicted of aggravated assault, admitted to simple assault

17   which is -- which subjects him to one year of probation.

18   Right?

19           MR. GILBERTI:  Correct.

20           THE COURT:  He's thereafter arrested, as reflected by

21   paragraphs 63 and 64, for a history which I don't know about.

22           Does the U.S. Attorney know anything about 63 and 64?

23           MR. ALMONTE:  No, your Honor, other than --

24           THE COURT:  All right.  Other than what's reflected in

25   the paragraph.  Is that correct?

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 6 of 41 PageID: 73
Case: 14-1825  Document: 003111735933  Page: 61  Date Filed: 09/11/2014

5

1          MR. ALMONTE:  Correct, your Honor.

2          THE COURT:  Paragraph 65, at the age of 21, in June of

3    1995, he's found guilty of distribution of CDS within 1,000

4    feet of school property, again by the Hudson County vicinage of

5    the Superior Court.  He's sentenced to five years in State

6    Prison.  He's paroled in June of 1997, and parole is revoked in

7    June of 1999.  And that's discussed in paragraphs 66 and 67.

8          Am I right so far?

9          MR. GILBERTI:  That's correct, your Honor.  And that

10   involved less than a half an ounce of drugs.

11         THE COURT:  All right.  But I'm talking about the

12   crime now.  Okay?

13         MR. GILBERTI:  I understand.

14         THE COURT:  Fair enough?

15         MR. GILBERTI:  Fair enough.

16         THE COURT:  In paragraph 68, he's originally charged

17   with aggravated assault on a law enforcement officer, but then

18   it's amended to "tried to prevent official action," for which

19   he received six months incarceration by the Superior Court of

20   Hudson County.  That's reflected in the following paragraphs:

21   68a. and b. and c.;

22         Then in paragraph 70, he's originally charged with

23   resisting arrest but it's amended to disorderly conduct for

24   which he gets six months.  That's a disorderly persons;

25         And then at age 24 he's consuming alcohol in a public

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 7 of 41 PageID: 74
Case: 14-1825    Document: 003111735933    Page: 62    Date Filed: 09/11/2014

6

```
 1    place and he's charged with an ordinance violation in paragraph
 2    74.
 3           But getting to a more substantive issue, he's
 4    thereafter found guilty of possession of CDS with intent to
 5    distribute within 1,000 feet of school property in 2002, April
 6    14, at the age of 28.  He's given five years special probation,
 7    but he's found in violation of that probation on April 8th and
 8    he's resentenced to five years in State Prison with a
 9    three-year parole ineligibility; and
10           in paragraph 80 he goes across the river and is found
11    guilty of criminal possession of CDS by the New York County
12    Supreme Court, for which he gets five years probation.
13           For some reason this reflects he has an open bench
14    warrant but I don't know why, but be that as it may.  And there
15    he's charged with possession of narcotics with the intent to
16    sell.  This arises out of that.  He's charged with being found
17    at 135th and Amsterdam in New York.
18           Now, the point is that I'm looking at -- there's some
19    confusion here as far as I'm concerned.  Paragraph 83, there's
20    a reference made to the Southern District of New York Federal
21    Court, but I thought all of this dealt with Supreme Court of
22    New York.
23           Can you enlighten me on this?
24           MR. GILBERTI:  I can't, your Honor.  We were taken
25    by --
```

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 8 of 41 PageID: 75
Case: 14-1825   Document: 003111735933   Page: 63   Date Filed: 09/11/2014

7

1          THE COURT:  You see the collateral response of the

2     Probation Office of the Southern District indicates the

3     defendant absconded from the above probation sentence and the

4     bench warrant remains active.

5          Unless it's a misprint as far as this action of

6     criminal possession of CDS occurred not in the Supreme Court

7     but in the Southern District jurisdiction.

8          MR. GILBERTI:  Well, it might have been a UFAB, your

9     Honor.  They may have taken the warrant to the Southern

10    District and gotten a Uniform -- UFAB application.

11         THE COURT:  Is that what they did?

12         THE PROBATION OFFICER:  No, Judge.  This paragraph

13    just simply means that we asked our counterparts in Manhattan

14    to research the warrant for us.  There is a warrant from New

15    York County Supreme Court.

16         THE COURT:  Oh.  You just asked the Southern District

17    to do that?

18         THE PROBATION OFFICER:  Yes.

19         THE COURT:  Okay.  Fair enough.  All right.  Okay.

20         Then again in October of 2002 he's found guilty of

21    possession of CDS, for which he is given five years probation,

22    but then later on that probation is revoked and he's sentenced

23    to five years with a three-year ineligibility, which relates

24    also to the episode of April 14, 2002.  The sentence applied to

25    both instances.  All right?

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 9 of 41 PageID: 76
Case: 14-1825   Document: 003111735933   Page: 64   Date Filed: 09/11/2014

8

1          MR. GILBERTI:  Correct.

2          THE COURT:  Okay.  Then back in December of 2002 he is

3     again confronted with possession of CDS with attempt to

4     distribute within 1,000 feet of school property in the Superior

5     Court of Hudson County, for which he again receives five years

6     probation.  And then, as with the other two matters, he's found

7     guilty in April of 2005 of violation of probation and he's

8     sentenced to five years with a three-year period of

9     ineligibility, parole ineligibility.  So, in other words, he

10    has a threesome there:  He has three separate convictions which

11    merge into a violation of probation.

12          Am I right?

13          MR. GILBERTI:  There were five, your Honor.  There

14    were five in total.

15          THE COURT:  Well, we're getting to it slowly, but

16    surely we're getting there.  All right.

17          MR. GILBERTI:  The tally sheet right now is three.

18          THE COURT:  All right.

19          Then we have a loitering to obtain and sell CDS in

20    October of 2003, which again is the subject of this matter of

21    probation revocation and sentencing on April 2005.  Right?

22          MR. GILBERTI:  Correct.  That's four.

23          THE COURT:  That's four.

24          Now we started out earlier when he was 18.  See,

25    that's wonderful.  He started out at 18.  He's now age 29.

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 10 of 41 PageID: 77
Case: 14-1825   Document: 003111735933   Page: 65   Date Filed: 09/11/2014

9

1    He's charged with bail-jumping in Superior Court, Hudson County

2    at age of 30, and he was subjected to being sent to State

3    Prison for seven years with a 42-month parole disqualifier, but

4    the prosecutor recommended that he participate in a long-term

5    in-patient drug program;

6           At the age of 35 he's convicted of harassment by the

7    New Jersey -- strike that -- by the Jersey City Municipal Court

8    which he's required to do 240 hours community service.

9           Now that's the history.  Am I right?

10          MR. GILBERTI:  You're correct, your Honor,

11          THE COURT:  I wanted to make sure I spelled it out

12   particularly for anybody who might be interested in hearing it.

13          So consequently, based upon that, what do you claim?

14          MR. GILBERTI:  Your Honor, well, first, there was the

15   five --

16          THE COURT:  Do you challenge any of the history?

17          MR. GILBERTI:  I'm challenging the severity of the

18   history.

19          THE COURT:  I'm not talking about that.  You're

20   talking about the effect --

21          MR. GILBERTI:  I'm not challenging the facts of the

22   history.

23          THE COURT:  That's what I'm driving at.

24          MR. GILBERTI:  No, I'm not challenging the facts of

25   the history.

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 11 of 41 PageID: 78
Case: 14-1825   Document: 003111735933   Page: 66   Date Filed: 09/11/2014

10

1            THE COURT:  Go ahead.

2            MR. GILBERTI:  What I am challenging, your Honor, is

3    the severity of the history.  The five offenses that you just

4    went through, they were all resolved on the same day, ended up

5    in -- originally a probationary sentence, and they were all

6    second and third -- they were all third and fourth degree and

7    municipal court level offenses, they were disorderly persons

8    offenses.

9            THE COURT:  Not the drug matters.

10           MR. GILBERTI:  The drugs that were involved there were

11   relatively small --

12           THE COURT:  CDS within a thousand feet of school

13   property --

14           MR. GILBERTI:  You're right there, your Honor, you're

15   right there.

16           But they gave -- they ended up -- ending up in 5

17   offenses that account for seven criminal history points ending

18   up in a probationary sentence.  Now he violated that because of

19   his drug problem.

20           THE COURT:  Regardless of what reason he violated it,

21   for which he later received a custodial term in the State

22   Prison --

23           MR. GILBERTI:  Correct.

24           THE COURT:  -- with a parole disclaimer.

25           MR. GILBERTI:  But the net effect, your Honor, is,

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 12 of 41 PageID: 79
Case: 14-1825   Document: 003111735933   Page: 67   Date Filed: 09/11/2014

11

1    even though there were intervening offenses or arrests -- and I

2    understand the legal significance of that -- what I'm

3    suggesting to you is, the way that the prosecution in the state

4    decided to resolve that matter overstates this thing.  It was

5    not a -- originally it was not a custodial sentence.  And

6    you're applying seven criminal history points for what were

7    relatively minor -- and again, in a hierarchical sense,

8    relatively minor criminal conduct --

9         THE COURT:  This is not like it was armed robbery, I

10   understand, or rape --

11        MR. GILBERTI:  Right.

12        THE COURT:  -- or treason.  I understand that.  Go

13   ahead.

14        MR. GILBERTI:  And that's the basis of my argument,

15   your Honor, that his criminal history is overstated.  And when

16   you look at it --

17        THE COURT:  But his criminal history has such

18   longevity.  He started out -- I didn't bother to deal with the

19   juvenile matter in fairness, but since the age of 14 he has

20   been in and out of court.

21        MR. GILBERTI:  That's correct, your Honor.  But since

22   the age of 30, the only problems he had was violating his

23   probation and the harassment charge, which is a municipal court

24   matter in Jersey City.  That's 10 years, your Honor.  He did

25   attempt to resurrect his life during that period and was

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 13 of 41 PageID: 80
Case: 14-1825   Document: 003111735933   Page: 68   Date Filed: 09/11/2014

12

1     attempting to correct things.  And given the disparate
2     proportion of the sentence -- I mean, the points that he got
3     for what was relatively less important criminal history, we
4     believe that, one, it does overstate his life's work to
5     characterize him as a career offender based on the relatively
6     minor history there.  This isn't a guy who was dealing kilo
7     amounts of drugs.  This isn't --

8           THE COURT:  But this is a guy who's been given,
9     apparently primarily in Hudson County, the benefit of the doubt
10    practically every time he appeared, and he appeared regularly
11    in the sense that I see nothing but probation, probation.
12    probation.  At long last the prosecutor said, no more of this.
13          Isn't that basically it?

14          I mean, it wasn't a situation where he was hit at the
15    outset and continued to be so hit with custodial terms.  He's
16    been given opportunities for rehabilitation throughout his
17    youth.

18          MR. GILBERTI:  You're correct.  But in the recent
19    years, your Honor -- and again, this gets back to my argument
20    about the distance from that, remoteness from that I think
21    that's also a factor here.  So we believe that for the reasons
22    that we set forth in our sentencing memo, when you look at it
23    comparatively, you have the discretion -- if you sentence him
24    to the amount that's contained in his plea agreement which is a
25    Level 23, Criminal History V, he's going to be away for seven

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 14 of 41 PageID: 81
Case: 14-1825   Document: 003111735933   Page: 69   Date Filed: 09/11/2014

13

1    to nine years.  He has 84 to 105 months.  That's more than

2    sufficient given his criminal history and given the fact

3    offenses in this case, and given the relatively minor amount of

4    drugs he's dealt with in his career to make the point, to send

5    a message to society from the standpoint of deterrence, it's

6    more than sufficient to punish him because he's going to come

7    out at age 46 and, you know, he's going to be an older guy

8    there, and we've argued about the recidivism rate as people get

9    older, and it will also permit him to rehabilitation in the

10   process, your Honor.  So we believe that if you sentence him to

11   the underlying offense you can make the same point without

12   putting him away for 16 years when you're --

13          THE COURT:  What specifically is the underlying

14   offense, now that you bring it up?  What is it?  Conspiracy to

15   distribute what?

16          MR. GILBERTI:  It was PCP and heroin.  And the amounts

17   were 11 grams of PCP, and something like 80 grams or 90 grams

18   of heroin.  You're talking amounts that are less than several

19   ounces; three, four ounces, your Honor.

20          Again, this is street level matters.  And again, I'm

21   not denigrating street level matters.  When I was Chief of

22   Narcotics at the U.S. Attorney's Office across the street in

23   the '80s we would have sent this to the State.  For whatever

24   reason, the Feds and the State are attempting to make a point

25   here.  But you can make that same point by sentencing him to

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 15 of 41 PageID: 82
Case: 14-1825   Document: 003111735933   Page: 70   Date Filed: 09/11/2014

14

1    the underlying offense, which is substantial.

2         THE COURT:  Well, except that we have a response dated

3    March 6th, 2014 in direct reply to what you just said.  And let

4    me read it to you so that you are aware of what I'm quite sure

5    your adversarial colleague will say when I give him an

6    opportunity to be heard; that is, he says on page 1:  (Reading)

7    Jenkins distributed narcotics to an undercover agent in the

8    course of seven separate transactions.  The quantity of PCP

9    .involved in this case was significant, enough that the United

10   States Congress requires this Court to impose a statutory

11   mandatory minimum sentence of at least five years in prison.

12         That point is taken.  All right?

13         In addition -- this is what is of interest to this

14   Court -- the quantity of heroin that Jenkins sold to the

15   undercover agent was enough to supply at least 3900 individual

16   drug addicts even by the most conservative estimate.

17         And why I say that is because you as part of your

18   argument indicate that what he sold was not that, let's say,

19   "Nicky Barnes," or another reputed drug dealer, or the one that

20   was just apprehended handed in Mexico.  But you are aware of my

21   position with regard to drug dealing.

22         MR. GILBERTI:  Yes, I am, your Honor.

23         THE COURT:  And I believe that it is dangerous, so

24   dangerous that it is contagious, that it is destructive of all

25   of us.  So that he was on the street is really of no moment to

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 16 of 41 PageID: 83
Case: 14-1825   Document: 003111735933   Page: 71   Date Filed: 09/11/2014

15

1    me.

2              MR. GILBERTI:  No, I --

3              THE COURT:  He engaged in something that could kill so

4    many people and affect so many people.  As I said before and

5    I'll say it to you again at the benefit of repetition:  Drug

6    dealing in this country affects all of us because all of us, if

7    we're honest enough, know that someone whom we know or even

8    someone who we've been related to or even heard of, have been

9    affected by it, either by usage or by being an innocent victim,

10   or being an innocent victim of a drive-by shooting or mugging,

11   you know.

12             And so those -- and it hits everybody.  It hits

13   everybody regardless of race or class or ethnicity, and it cuts

14   across borders.  It is just -- it is a plague.  And it does us

15   no good to say, well, he's a nice boy.

16             You see, I read a letter from someone saying, well,

17   I've known him for 16 years.  He's always been nice.

18             As far as I'm concerned, no one selling drugs

19   willingly is nice.

20             Go ahead.

21             MR. GILBERTI:  I'm not arguing that point.  And to the

22   extent that you're relying on that information, that's hearsay

23   and I don't believe it should be relied on absent a hearing

24   where we can challenge it.  But laying that aside --

25             THE COURT:  You're talking about the 3900?

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV Document 4-1 Filed 05/15/15 Page 17 of 41 PageID: 84
Case: 14-1825 Document: 003111735933 Page: 72 Date Filed: 09/11/2014

16

1           MR. GILBERTI: Yes, that information.

2           But laying that aside, your Honor, I'm not saying he's

3      a nice boy, that's not my argument.

4           THE COURT: You sent me a letter --

5           MR. GILBERTI: I sent you a letter in mitigation of

6      sentencing, and that was for part three of the structure.  The

7      first one is fixing the --

8           THE COURT: What you're saying is that -- you're

9      saying that seven to nine is sufficient punishment.  That's

10     what you're saying.

11          MR. GILBERTI: That's exact what I'm saying, your

12     Honor.

13          THE COURT: I see.  The point is, you may have a

14     point -- I'm not saying do -- but you may have a point.  He's

15     40 years of age.  According to the table he probably has

16     another at least 30-plus, 40 years to go statistically unless

17     he has an untoward event that shortens his life expectancy.  So

18     he's really middle age, you know.  So the point is, how is he

19     going to spend the rest of his life?  So far he's spent most of

20     his life in and out of jail.  Whether it's momentarily or --

21     that's why I deliberately went down and chronicled the history.

22     So we'll see.

23          What else to do you want to tell me before I turn

24     it -- with regard to this issue, I want to hear from the

25     Assistant United States Attorney.  Anything else you want to

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 18 of 41 PageID: 85
Case: 14-1825   Document: 003111735933   Page: 73   Date Filed: 09/11/2014

17

1    tell me?

2          MR. GILBERTI:  No.  I just wanted to make sure that

3    his trend in his life was an upward trend at the time this

4    occurred.  Now again, the 2009 municipal court thing, and from

5    2008 onward, you know, there was very little else.  So we would

6    submit that to you, and that comes in at the -- you know, for

7    the interest of rehabilitation, the aspects of this thing, that

8    we can reclaim a life here.

9          THE COURT:  He's been given ten-plus years of

10   rehabilitation attempts.  It's almost mind-boggling to say,

11   knowing what Hudson County does -- I used to sit on the

12   Superior Court here in Excess.  But this history is quite

13   interesting, that he was given so many times a chance to get

14   his act together.

15         Anyway, be that as it may.

16         MR. GILBERTI:  Thank you, your Honor.

17         THE COURT:  With regard to this issue.

18         MR. ALMONTE:  Thank you very much, your Honor.

19         THE COURT:  Yeah.

20         MR. ALMONTE:  And as you already stated, you do have

21   discretion to depart downward, but the Government would urge

22   your Honor to not do so.

23         THE COURT:  Why?

24         MR. ALMONTE:  Well, your Honor went through all the

25   history, but just to put it in perspective, and I know you

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 19 of 41 PageID: 86
Case: 14-1825   Document: 003111735933   Page: 74   Date Filed: 09/11/2014

18

1    started with the age of 18.  I go back two more years.  And
2    since the age of 16 to the age of 38 when he was arrested in
3    this case, he accumulated 17 convictions.  And one was for
4    robbery; there were at least two simple assault; and seven drug
5    convictions.
6            THE COURT:  In fairness, in fairness, I appreciate
7    you -- I deliberately did not go into the juvenile just from
8    the standpoint I figured, you know, even juveniles can be tried
9    as adults.  But he wasn't, he was tried as a juvenile.  So I
10   felt I would not consider that in fairness to him because, you
11   know, they're crazy teenagers.
12           MR. ALMONTE:  That's a fair point, your Honor.
13           THE COURT:  As a parent I know that.  Go ahead.
14           MR. ALMONTE:  So one of the points that the defense
15   made in favor of not applying the career offender guidelines is
16   that the amount in this case is small --
17           THE COURT:  Right.
18           MR. ALMONTE:  -- and that his prior convictions are
19   small.
20           THE COURT:  Right.
21           MR. ALMONTE:  There are two responses to that.  As a
22   factual matter that's not correct.  Your Honor took interest in
23   the 3900 -- or when I stated that the amount of heroin here --
24           THE COURT:  Which is challenged by your colleague.
25           MR. ALMONTE:  Right.


WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 20 of 41 PageID: 87
Case: 14-1825   Document: 003111735933   Page: 75   Date Filed: 09/11/2014

19

1         And your Honor presided over the plea hearing.  During

2    that colloquy we went specifically and discussed the term

3    "brick" and what "brick" means.  And that means that that

4    amount of heroin was packaged in individual glassine envelopes

5    so that it could be distributed to individuals.  Therefore, one

6    brick is equivalent to 50 glassine envelopes for individuals.

7    There were 78 bricks of heroin.

8              THE COURT:  How many?

9              MR. ALMONTE:  78.

10             THE COURT:  78?

11             MR. ALMONTE:  So --

12             THE COURT:  So therefore?

13             MR. ALMONTE:  Therefore that's --

14             THE COURT:  The mathematical calculation doesn't

15   require my having a hearing.

16             MR. ALMONTE:  Exactly, your Honor.  And it's also

17   stated in the Presentence Report.

18             So that's where we get the 3900 individual doses.

19             THE COURT:  Well, let's assume -- I take your point.

20   Let's assume that that heroin was of that sufficient quantity,

21   so then it would have equated to 3900 hits.  But how much is

22   enough in the context of reasonableness as far as sentence is

23   concerned?  You follow what I'm saying?

24             MR. ALMONTE:  I understand, your Honor.

25             THE COURT:  What you're talking about, should I give

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 21 of 41 PageID: 88
Case: 14-1825   Document: 003111735933   Page: 76   Date Filed: 09/11/2014

20

1    him 16 years at least according to your -- 188.  Right?

2              MR. ALMONTE:  Yes.

3              THE COURT:  Or take him out to practically 20 in 235?

4              MR. ALMONTE:  Your Honor, I --

5              THE COURT:  That's the spread, isn't it:  188 to 235?

6    If I were to give him 235 that would be practically 20 years.

7              MR. ALMONTE:  Correct.

8              THE COURT:  Right?

9              Twenty times 12, that's what I'm saying.  So that's no

10   big deal.  You follow what I'm saying?

11             But I look at it in what I hope to be a reasonable

12   situation.  There's no parole in our federal system.

13             MR. ALMONTE:  That's correct.

14             THE COURT:  So we expect him to do at least 85 percent

15   of whatever time I do give him.  And at the same time, the

16   goals are to punish as well as to afford, if necessary, or if

17   appropriate, if appropriate, not if necessary, if appropriate,

18   the chance to rehabilitate oneself.

19             MR. ALMONTE:  Correct.

20             THE COURT:  So if I give him 20 years I just confine

21   him to being a senior citizen in jail.  Right?

22             MR. ALMONTE:  Correct.

23             THE COURT:  Because he's 40 now.  And if I come down

24   to 188, he has spent all of his youth and practical middle age

25   in jail too.  Which one does he deserve?  And that's the

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 22 of 41 PageID: 89
Case: 14-1825   Document: 003111735933   Page: 77   Date Filed: 09/11/2014

21

1   question we have to deal with in the context of the factors

2   that we analyze for sentencing and the context of trying to

3   afford him a reasonable sentence.  And your colleagues speaks

4   that for the last more or less 10 years he's been relatively

5   clean.

6           MR. ALMONTE:  Your Honor, that's actually not correct.

7   When you take into account --

8           THE COURT:  Let me hear what you have to say.

9           MR. ALMONTE:  Well, when you take into account the

10  period of incarceration, I believe that offense was in 2004.

11  And he was released on parole, then that parole was revoked and

12  he was sent back to jail until May of 2008.  So the starting

13  point is May 2008 because that's when he was released from

14  prison.  And then about a year later he again committed another

15  crime, that one concerns harassment.  And then two years after

16  that he committed this crime.  So he hasn't lived -- it's not

17  as if he lived 10 years crime-free in society.  Part of that

18  was incarceration.

19          THE COURT:  Let me find out something from you,

20  because where is the original plea agreement?  Let me see the

21  original plea agreement.

22          MR. ALMONTE:  I don't have the original with me.

23          THE COURT:  I only have -- I only have a part of it --

24  what did we finally end up in the plea agreement with the

25  level?

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 23 of 41 PageID: 90
Case: 14-1825   Document: 003111735933   Page: 78   Date Filed: 09/11/2014

22

```
1              MR. GILBERTI:  It was Level 23.

2              THE COURT:  I can't hear you.

3              MR. GILBERTI:  Level 23.

4              THE COURT:  23, with a Criminal History of V?

5              MR. GILBERTI:  Correct.

6              THE COURT:  Because I don't see how it was reached in

7    my copy of the presentence investigation.  It stops at 31, and

8    I didn't...

9              MR. ALMONTE:  Your Honor, on page 8 --

10             THE COURT:  Page 8?

11             MR. ALMONTE:  -- paragraph 10 it sets forth what the

12   agreed total --

13             THE COURT:  I'm with you now.  Yeah, right.  So it's

14   either 31 or 23, depending on what I determine.

15             MR. ALMONTE:  Correct, your Honor.

16             THE COURT:  Oh.  I'm with you now.  I'm with you now.

17   All right.

18             What say you with regard to the earlier offense, the

19   earlier -- the earlier felony?

20             MR. ALMONTE:  Well, there were three convictions that

21   are the predicate --

22             THE COURT:  That's what -- I'm examining the

23   predicate.  Go ahead.

24             MR. ALMONTE:  -- for the career offender status.

25   There was one on June 9th, 1995, and that's found in paragraph
```

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 24 of 41 PageID: 91
Case: 14-1825   Document: 003111735933   Page: 79   Date Filed: 09/11/2014

23

1       65.

2                  THE COURT:  Right.

3                  MR. ALMONTE:  And that was for distribution.

4                  THE COURT:  That was, as I recall it, within a

5       thousand feet, wasn't it?

6                  MR. ALMONTE:  That's correct, your Honor.

7                  THE COURT:  At the age of 21 --

8                  MR. ALMONTE:  Correct.

9                  THE COURT:  -- probably in Jersey City, but anyway, in

10      Hudson County, he got five years.

11                 MR. ALMONTE:  Correct.

12                 THE COURT:  All right.  Go ahead.

13                 MR. ALMONTE:  And he didn't learn his lesson then,

14      your Honor, because --

15                 THE COURT:  Wait.  Slow up, slow up, slow up, slow up.

16                 We do have some idea of what it was.  He distributed

17      cocaine.  He distributed cocaine of less than a half an ounce.

18                 MR. ALMONTE:  That's correct, your Honor.

19                 THE COURT:  At the same time he allegedly possessed

20      heroin of less than a half ounce as well.  Okay.  All right.

21                 Go ahead.  All right.  Now what's -- now that's the

22      first.  What's the second?

23                 MR. ALMONTE:  The second predicate offense is found on

24      paragraph 76.

25                 THE COURT:  At the age of 28.

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 25 of 41 PageID: 92
Case: 14-1825    Document: 003111735933    Page: 80    Date Filed: 09/11/2014

24

1           MR. ALMONTE:  Correct.

2           THE COURT:  Again, he's charged with and found guilty

3    of possession with CDS with attempt to distribute within a

4    thousand feet of school property in Hudson County, and he is

5    distributing cocaine as well as heroin.

6           MR. ALMONTE:  As well as -- no, that's correct, your

7    Honor, just heroin and cocaine.

8           THE COURT:  Right.  Is that right?

9           MR. ALMONTE:  Yes, your Honor.

10           THE COURT:  And he gets five years special probation.

11    That's when I was telling you about what happened in Hudson

12    County Superior Court.

13           All right.  And now we have --

14           MR. ALMONTE:  Then there's one more, your Honor.

15           THE COURT:  Which is?

16           MR. ALMONTE:  In paragraph 88.

17           THE COURT:  Again, possession of CDS with attempt to

18    distribute within a thousand feet of school property at age of

19    29, and there he's found with six vials of cocaine and 70 bags

20    of heroin.

21           MR. ALMONTE:  That's correct, your Honor.

22           THE COURT:  Right?

23           Go ahead.

24           MR. ALMONTE:  So two points, your Honor.  As a factual

25    matter I disagree that those were small offenses.  But even if

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 26 of 41 PageID: 93
Case: 14-1825    Document: 003111735933    Page: 81    Date Filed: 09/11/2014

25

1      your Honor --

2              THE COURT:  He didn't say they're small offenses, he

3      said they're small amounts.

4              MR. ALMONTE:  Small amounts.

5              THE COURT:  Right.

6              MR. ALMONTE:  But if your Honor were to consider those

7      small amounts, legally the Third Circuit has affirmed cases

8      where the amounts were even smaller.  I cited one particular

9      case --

10             THE COURT:  I know, but that's all within the

11     discretion I have here though.

12             MR. ALMONTE:  Of course.

13             THE COURT:  I mean, I could call something half full;

14     you might call it half empty.  Both of us should be affirmed

15     because if we did a reasonable analysis you would come up with

16     a conclusion.  Right?

17             MR. ALMONTE:  But just to highlight one case, your

18     Honor, in United States vs. McCleve (phonetic), which is cited

19     in the memorandum, in that case a defendant was sentenced to

20     151 months and the amount that was distributed was only 3.7

21     grams of heroin.

22             THE COURT:  Yeah.  And normally I would say that's a

23     good discretion of that particular judge because normally I

24     would not go that far.

25             MR. ALMONTE:  I understand.  But I also wanted to

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 27 of 41 PageID: 94
Case: 14-1825   Document: 003111735933   Page: 82   Date Filed: 09/11/2014

26

1    point out that there is legal support for maintaining the

2    career offender status in this particular case.

3           THE COURT:  That's one judge called it one way and,

4    you know, my problem -- we'll deal with that issue -- we'll

5    deal with whether I determine him to be a career offender.  And

6    let me hear again from the defense and then I will have to tell

7    you what I think.

8           MR. ALMONTE:  Thank you, your Honor.

9           THE COURT:  I'm talking only about this issue of -- do

10   you wish to respond?

11          MR. GILBERTI:  Just, you hit the nail on the head

12   on -- I'm sorry -- on the McCleve case and the cases he cited,

13   you're right, your Honor, those both came from the same Court

14   of Appeals judge.  Neither one of them is precedential --

15          THE COURT:  That's not the point.  We're dealing with

16   real life.

17          MR. GILBERTI:  I understand.

18          THE COURT:  All I said is that one judge called what

19   he had in front of him differently, and that doesn't mean that

20   he or she was wrong or incorrect, or right.  It just means that

21   that's what that person did.  And like I said, that's the

22   difference between half full and half -- it's not a

23   difference -- half full and half empty.

24          I'll tell you what my main problem with this case is

25   as far as you are concerned:  Whether the amounts are

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 28 of 41 PageID: 95
Case: 14-1825   Document: 003111735933   Page: 83   Date Filed: 09/11/2014

27

1    insignificant or not, according to you, is a secondary issue.
2            You know what is significant to me?  That over a
3    period of 10 years he dealt with drug traffic within a thousand
4    feet of school property, and that seemed to be his hallmark in
5    trade.  And I'd be a fool if I didn't say that that didn't
6    impress me, because he is providing opportunity for persons
7    well under adult age to be exposed to drug traffic.
8            MR. GILBERTI:  May I answer that?
9            THE COURT:  You may.  You may respond to it.  You
10   don't answer it, you may respond to it.
11           MR. GILBERTI:  Yes.
12           THE COURT:  And as I said to you before, the
13   drug-trafficking has decimated too much of our society, both
14   here and in Jersey City and throughout this state and
15   throughout other states and other countries.  So the point is,
16   drug traffic is a contagion, as I said before.  And one who
17   willingly does it in this situation is doing it out of
18   basically two reasons:  One, he needs to support his own habit;
19   and/or greed.
20           But go ahead, respond.  What do you have to say?
21           MR. GILBERTI:  No.  Your Honor, having been on the
22   defense side for a number of years it's hard in a place like
23   Jersey City not to be charged with dealing, if you're dealing.
24   And again, I'm not saying it's good to be dealing.  But it's --
25   it would be -- I would hazard to say you probably can't find an

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 29 of 41 PageID: 96
Case: 14-1825   Document: 003111735933   Page: 84   Date Filed: 09/11/2014

28

1        area that's not a hundred feet -- a thousand feet from a school

2        in Jersey City, and a lot of times prosecutors use that to up

3        the ante to leverage pleas.

4                So I understand your concern, and I understand the

5        purpose of the law.  The purpose of the law was a shield; it

6        was to protect kids in school, to keep them from having -- from

7        people from preying on them and dealing with a school.  But

8        over the years it's become a sword the prosecutors have used.

9        They've manipulated transactions or in some places, as I said

10       in Jersey City, you probably can't be more than a thousand feet

11       from a school.  So I think --

12               THE COURT:  As you reminded me, you know, that coming

13       from you is hearsay, isn't it?

14               MR. GILBERTI:  Absolutely, your Honor.

15               THE COURT:  All right.

16               MR. GILBERTI:  But so was your observation.

17               (Laughter.)

18               MR. GILBERTI:  Anyway, your Honor, I understand.  I'm

19       not --

20               THE COURT:  The observation I made was just that I

21       conclude that the purpose of the law is to hopefully inhibit or

22       prevent drug traffic to those who are very susceptible to such

23       traffic because they are of young age, and those are school

24       children going to and from school.

25               MR. GILBERTI:  I understand.  But I made my comments

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 30 of 41 PageID: 97
Case: 14-1825   Document: 003111735933   Page: 85   Date Filed: 09/11/2014

29

1    to it.  Thank you.

2            THE COURT:  Okay.  As far as I'm concerned, based upon

3    the circumstances of these offenses occurred in the space of 10

4    years involving the specific thrust of drug-trafficking within

5    a thousand feet of school property and in amounts that -- --

6    whether they be called "insignificant" by any others, by one's

7    definition, they are significant as far as I'm concerned in the

8    fact that they cause danger and damage and possibly death to

9    those who willingly or unwillingly participate, and it shows a

10   history which is that of repetition.  As far as I'm concerned,

11   that's career -- that affords him career offender status, and

12   the calculation is 31 with a Criminal History of VI.  As far as

13   I'm concerned, he is a career offender in the context of

14   drug-trafficking.

15           All right.  That said, I'll hear from you again before

16   I sentence him.

17           MR. GILBERT:  Well, against that backdrop, your Honor,

18   you ought to sentence him at the bottom end of the guideline

19   range --

20           THE COURT:  I intend to.

21           MR. GILBERTI:  -- because I think you've hurt him

22   enough at this point.

23           THE COURT:  No, no, no, you misunderstood that.  I

24   have not hurt him; he has hurt himself.

25           MR. GILBERTI:  I understand.

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 31 of 41 PageID: 98
Case: 14-1825   Document: 003111735933   Page: 86   Date Filed: 09/11/2014

30

1          THE COURT:  When he looks in the mirror he'll find

2     someone he can complain about.  You know, he doesn't complain

3     about Walls or anybody, he or the prosecutor or the Government,

4     he complains about who he sees in that mirror.

5          MR. GILBERTI:  I understand.  I wasn't commenting on

6     your --

7          THE COURT:  Unless he's in denial.

8          MR. GILBERTI:  I was commenting on your intent, I was

9     commenting on the result, that the damage was enough.  But we'd

10    ask that he be, for all the reasons set forth in the letters

11    and everything else, he be sentenced at the bottom end of the

12    guidelines.

13         THE COURT:  And I said I would do that.

14         Does your client wish to be heard?

15         I'll hear from you.

16         MR. GILBERTI:  Do you want to say something?

17         THE DEFENDANT:  State my name?

18         MR. GILBERTI:  No.  You can just tell him what you

19    want to say.

20         THE DEFENDANT:  I want to apologize to the Court for

21    my actions.  I want to apologize to my family.

22         First of all, your Honor, I want to let you know that

23    I'm accepting responsibility to my actions that I did things

24    that I did in my life.  I know they wasn't right.  I did them.

25    I'm here to accept responsibility for them.  Once again, I

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 32 of 41 PageID: 99
Case: 14-1825    Document: 003111735933    Page: 87    Date Filed: 09/11/2014

31

1      apologize to the Court and my family.  I'm sorry I had my

2      family come all the way from South Carolina for a day such as

3      this.

4              THE COURT:  My concern is -- and I appreciate what

5      you're telling me now -- my concern is that, as I've pointed

6      out I believe almost repeatedly to your attorney, that in the

7      course of your criminal history, you were given numerous

8      opportunities for rehabilitation and all of them ended up with

9      probation being revoked for the most part, unless I have

10     overstated it.  I don't think I did.  And that's what bothers

11     me about you in this; is that you were given so many

12     opportunities.  You know, you're age 40 now, but long before

13     that you were out of Pampers.  You were not a child.  That's

14     why I told the attorney, I was not dealing with your juvenile

15     history.  In fairness to you, I was not dealing with your

16     juvenile history which he wanted me to consider.  I did not

17     consider that.  I'm considering your adult history.

18             So tell me about that in the context, why did you blow

19     those chances?

20             THE DEFENDANT:  Yes, I wanted to speak on that.

21             Your Honor, really, I really didn't blow those

22     chances.  I was forced out of those chances.  When the judge in

23     Jersey City gave me a special probation and a long-term drug

24     probation, I attended to that program.  I was there at

25     Integrity House.  There's records that show you I as there.  I

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 33 of 41 PageID: 100
Case: 14-1825    Document: 003111735933    Page: 88    Date Filed: 09/11/2014

32

1    had a counselor.  Her name was Amotalab Mahaney (phonetic).  I

2    don't know what was her reasons, but if you go back deep into

3    the records, it was stated that the way she was attacking me

4    was from -- she revealed her hand and told me that when I

5    entered the drug program that I was to be watched.  So when she

6    told me that, I found out who was supposed to told her who I

7    was watched by, and it was supposed to be from the prosecutor.

8         So once I found out that, I had got -- I wrote a

9    letter to the Ethic Committee in Washington D.C.  So when they

10   came, they came to Jersey City, the court, on my behalf.  I

11   wasn't -- my opportunities to go back to the program was --

12   that's what I wanted to do, but I was forced out by her.

13        THE COURT:  I know.  But, good buddy, we're not

14   talking about the program.  We're talking about your later

15   commission of crimes.  You know, that you had some problems

16   with that person in Integrity House is not what I was talking

17   about.  I'm talking about the fact that you were given

18   opportunity to rehabilitate yourself.  The next thing you know

19   you're back in court.  That's what I'm talking about.  Follow

20   what I'm saying?

21        THE DEFENDANT:  Yes.

22        THE COURT:  That's what I'm talking about.  I'm not

23   talking about your experience at Integrity House or the fact

24   that somebody was out to get you there.

25        You're not claiming that she made you commit crimes,

Case 2:15-cv-02091-JMV   Document 4-1   Filed 05/15/15   Page 34 of 41 PageID: 101
Case: 14-1825   Document: 003111735933   Page: 89   Date Filed: 09/11/2014

33

1    are you?

2          THE DEFENDANT:  No.  I specified that because you said

3    I was given multiple times at probation.

4          THE COURT:  The point is, probation gives you an

5    opportunity to get your act together and start living hopefully

6    a normal legal life, that's what I meant by that.  Whether

7    you're in Integrity House or outside Integrity House, that's

8    what I mean by that.  That's what I meant by that.  That's what

9    I mean by it.  So I'm talking about that, you know, after you

10   were given probation, the next thing you know you're back in

11   court for another event, another circumstance.

12         Go ahead.

13         THE DEFENDANT:  Yes, you right.  I could admit that me

14   coming back-and-forth into the system, I had a problem as of my

15   own addiction, falling to certain things that I fell to, to

16   commit different crimes to come back into the system.  I tried.

17   I tried even before this case was up, before I caught this

18   case.

19         THE COURT:  All right.  Anything else you want to tell

20   me?

21         THE DEFENDANT:  I would hope that you be leniency

22   towards my sentence.  And once again, I want to thank the

23   Court.  I want to apologize to the Court and my family.

24         THE COURT:  All right.  Thank you.

25         THE DEFENDANT:  You're welcome.

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 35 of 41 PageID: 102
Case: 14-1825   Document: 003111735933   Page: 90   Date Filed: 09/11/2014

34

1          THE COURT:  Thank you, sir.

2          Let me hear from the Government's representative.

3          MR. ALMONTE:  The Government doesn't have anything

4  else to add, it simply incorporates the March 6th, 2014 letter

5  that was addressed to your Honor.

6          THE COURT:  Mr. Jenkins, stand, please.

7          You are 40 years of age.  And before you reached that

8  age, well before you reached that age you have been involved in

9  criminal activity for the better part of your adult life.

10  You're here before me because you pled guilty to conspiring

11  planning to distribute, to sell and distribute PCP and heroin,

12  and that arose out of your having sold 11.8 grams of PCP and

13  89.6 grams of heroin to a confidential informant.  That's why

14  you're here precisely before me.

15          But as I said, we discussed your criminal history.  I

16  took time to place your entire adult criminal history on the

17  record so that it would be the background in order for me to

18  listen to arguments of counsel to determine whether you should

19  be a career offender.  And I found that based upon over a

20  period of time, substantial period of time, you have

21  inevitably, almost in a chronic situation, found fit to attempt

22  to or actually sell or distribute drugs within 1,000 feet of

23  school property, and they form the basis on at least three

24  occasions where you have been convicted of such crimes, and

25  they are felonies under our law, and they under a calculation

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 36 of 41 PageID: 103
Case: 14-1825  Document: 003111735933  Page: 91  Date Filed: 09/11/2014

35

1    require me to determine that you are a career offender.

2         And I think realistically based on my analysis you are

3    a career offender.  As I said, you used the same spot.  Now,

4    your attorney argues, well, any spot within Jersey City is

5    within a thousand feet of school district.

6         Well, that really is of no moment.  The point is, you

7    were selling -- attempting to sell narcotics, as I've said

8    before, something that is destructive to too many people for me

9    to ignore that.  And the amounts are sufficient as far as I'm

10   concerned to be destructive to too many innocent people, people

11   who actually use those drugs, people who are relatives of

12   people who use them, people who are acquaintances.  We can

13   discuss the myriad ways in which drug activity and drug usage

14   has damaged, you know, our society, whether it be of one

15   race -- and it cuts across all races, so it's not a question of

16   our race, it's question of the human race -- and it cuts cut

17   city boundaries and it cuts off state and national boundaries.

18   It is just destructive.  And for that, society, when it has the

19   opportunity to punish people who voluntarily engage in that

20   activity, should provide appropriate punishment.

21        So that is the underlying rationale for my determining

22   that you are a career offender and also the underlying

23   rationale for my imposing the sentence I'm about to impose upon

24   you.  You have to be punished so that it stings, and that is to

25   stop you and to punish you on behalf of society and hopefully

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 37 of 41 PageID: 104
Case: 14-1825   Document: 003111735933   Page: 92   Date Filed: 09/11/2014

36

1    stop others from continuing down this path of drug-trafficking.

2            Those who think that you shouldn't be so punished for

3    such drug-trafficking are, respectfully, in a state of denial.

4    Because there's no question that drug-trafficking to me is as

5    onerous and dangerous as any other type of crime short of

6    deliberate immediate murder.

7            So we punish you in this way so that it stings, no

8    more than is necessary, but no less than is necessary because

9    it is of such importance to society.  I mean, there's no point

10   in repeating what I've said to all of you in our discussion of

11   your case this morning.  Drug-traffic is destructive.  This is

12   not a question of crack cocaine versus cocaine.  We're not

13   dealing with a situation where the sentences would be

14   disparate.  This is not that.  This is a question where we're

15   dealing with a person who willingly sold drugs over a period of

16   10 years, and I think the appropriate sentence is what I'm

17   about to say.

18           At the same time, even though the punishment should

19   sting, it doesn't mean that you will spend the rest of your

20   life in jail.  You have according to the mortality tables

21   probably at least 30 to 40, possibly 50 years, 50-plus years to

22   go unless something untoward happens.  Unless some accident

23   happens to you, unless some serious injury occurs to you, you

24   have half of your life ahead of you, and so hopefully you will

25   spend that time getting your act together.


WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 38 of 41 PageID: 105
Case: 14-1825   Document: 003111735933   Page: 93   Date Filed: 09/11/2014

37

1        But pursuant to the Sentencing Reform Act of 1984,

2   it's my judgment that you, Daniel Jenkins, are hereby committed

3   to the custody of the Bureau of Prisons to be imprisoned for a

4   term of 188 months.

5        Upon release from imprisonment, you are to be placed

6   on Supervised Release for a term of five years.  Within 72

7   hours of release of the custody of the Bureau of Prisons you

8   are to report in person to the probation office in the District

9   in which you are released.

10       Now, while you are on Supervised Release, you're not

11  to commit any other federal, state, or local crime; you may not

12  possess any firearm or any other dangerous device; you may not

13  possess any illegal controlled substances; and you are to

14  comply with the other standard conditions that have been

15  adopted by the Court.

16       I'm going to require that you submit to one drug test

17  within 15 days of the beginning of your period of Supervised

18  Release.

19       Now, you are to refrain from the illegal possession

20  and use of drugs, including prescription medication not

21  prescribed to, or in your name; and the use of alcohol; and you

22  are to submit to urinalysis or other forms of testing to ensure

23  compliance.

24       It is further ordered that you are to submit to

25  evaluation and treatment on an outpatient or in-patient basis

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 39 of 41 PageID: 106
Case: 14-1825   Document: 003111735933   Page: 94   Date Filed: 09/11/2014

38

1    as approved by the United States Probation Office.  You are to

2    abide by the rules of any such program and remain in treatment

3    until you've satisfactorily discharged by the Court.

4            You don't have the ability to pay a fine; I so make

5    that determination, and I will waive the fine in this matter.

6    But you are ordered to pay to the Court a total special

7    assessment of $100.00, which is due immediately.

8            You have the right to appeal what I've done pursuant

9    to Section 3742 of Title 18 United States Code, and if you're

10    not able to pay you may request the Clerk of the Court to file

11    a Notice of Appeal on your behalf.

12            I recommend that the Bureau of Prisons designate a

13    facility for service of this sentence as near as possible to

14    your home address.

15            Anything else?

16            MR. GILBERTI:  Yes, your Honor.  We'd ask that you

17    recommend to the Bureau of Prisons --

18            THE COURT:  Come up.

19            MR. GILBERTI:  I'm sorry.

20            THE COURT:  You ask what?

21            MR. GILBERTI:  We ask that you recommend to the Bureau

22    of Prisons that he be assigned to the Residential Drug Abuse

23    Program, the 500-hour comprehensive program in the Bureau of

24    Prisons.  He needs a judge's recommendation to be --

25            THE COURT:  He has that recommendation.

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 40 of 41 PageID: 107
Case: 14-1825   Document: 003111735933   Page: 95   Date Filed: 09/11/2014

39

```
 1              MR. GILBERTI:  Thank you, your Honor.
 2              THE COURT:  It's called what now?
 3              MR. GILBERTI:  The Residential Drug Abuse Program.
 4              THE COURT:  All right.  I so recommend.
 5              UNIDENTFIED AUDIENCE MEMBER:  Jesus.
 6              MR. GILBERTI:  And also -- and I am only doing this,
 7    not to incur your wrath from earlier, but I've had situations
 8    where the Bureau of Prisons has given me a hard time -- I would
 9    ask you to give him credit on the record for the time he served
10    since September 12th of 2012.
11              THE COURT:  If he's been in federal custody since
12    September 12th did you say?
13              MR. GILBERTI:  Yes.
14              THE COURT:  Of 2013?
15              MR. GILBERTI:  2012.
16              THE COURT:  2012?
17              He's entitled to such --
18              UNIDENTFIED AUDIENCE MEMBER:  Oh God.  Oh, God.  Oh
19    Jesus.  God.  Oh Lord.  Jesus, Lord, help.  Oh, alleluia, help
20    me.
21              THE COURT:  He's entitled to such, and I give him
22    credit for it.
23              MR. GILBERTI:  Okay, thank you.  The only reason I
24    bring it up is I've had disputes with the Bureau of Prisons in
25    the past where it wasn't on the record.
```

Case 2:15-cv-02091-JMV  Document 4-1  Filed 05/15/15  Page 41 of 41 PageID: 108
Case: 14-1825   Document: 003111735933   Page: 96   Date Filed: 09/11/2014

40

1          THE COURT:  No, I have no problem with that.  As I

2    say, if he's been in federal custody since September 12th of

3    2012, he's entitled to credit toward the sentence.

4          MR. GILBERTI:  Thank you, your Honor.

5          THE COURT:  That's practically two years.

6          Anything further from anyone?

7          MR. ALMONTE:  Nothing from the Government, your Honor.

8          THE COURT:  All right.  So be it.

9          He's been sentenced on a Level 31 with a Criminal

10   History of VI.

11         MR. GILBERTI:  I think his family came a long distance

12   today.  Will they be able to see him downstairs in the bullpen

13   for about a --

14         THE COURT:  I don't know, that's up to the marshals.

15   That's up to -- I doubt it.

16         A MARSHAL:  No.  It's not allowed.

17         THE COURT:  I'm sorry.

18         (Conclusion of proceedings.)

19                          ooOoo

20

21

22

23

24

25

WALTER J. PERELLI, C.S.R., OFFICIAL COURT REPORTER, NEWARK, NJ