## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DANIEL JENKINS, | : | Civil Action No. 15-2091 (JMV) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |

**John Michael Vazquez, U.S.D.J.**

This case concerns claims that defense counsel was ineffective and that a sentencing

guideline was incorrectly applied. Petitioner Daniel Jenkins seeks relief pursuant to 28 U.S.C. §

2255. D.E. 47. Respondent (the "Government") filed opposition, D.E. 49, to which Petitioner

replied, D.E. 50. The Court reviewed the parties' submissions[1] and decided the motions without

---

[1] Petitioner's brief in support of his motion will be referred to as "Br." (D.E. 47); Respondent's opposition will be referred to as "Opp." (D.E. 49); and Petitioner' reply will be referred to as "Reply" (D.E. 50). Petitioner filed his initial motion on March 24, 2015. D.E. 1. Petitioner thereafter filed numerous supplemental documents, which either expanded on his initial request, raised new grounds for relief, or replied to the Government's opposition. D.E. 6, 17, 18, 20, 23, 26, 29 The Government filed numerous oppositions. D.E. 4, 22, 33. On October 19, 2018, Judge Walls determined that a hearing was required on Petitioner's ineffective assistance of counsel claim as to Petitioner's direct appeal. D.E. 35. Judge Walls also appointed counsel for Petitioner. *Id.* Petitioner's counsel then submitted a supplemental brief on April 22, 2019, D.E. 39, and the Government responded, D.E. 41.
 On July 18, 2019, the matter was transferred to the undersigned following the passing of Judge Walls. D.E. 42. Thereafter, the Court held a telephone conference with counsel and issued an Order, D.E. 45, 46. Among other things, the Court permitted Petitioner's counsel to submit one omnibus brief that consolidated the numerous and various bases for relief that Petitioner had asserted on various dates. As a result, D.E. 47, 49, 50 address all outstanding arguments while also incorporating the prior submissions by reference. For ease of reference, the Court refers to D.E. 47 ("Br."), 49 ("Opp."), 50 ("Reply"), but also refers to the prior filings by docket entry if necessary.

oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[2] For the reasons stated below, Petitioner's motion is denied and no certificate of appealability shall issue.

## I.    Background

### A. Petitioner's Criminal Case – Crim. No. 13-646

On September 12, 2012, a criminal complaint was filed against Petitioner, John Edwards, and two others, charging them with a conspiracy to distribute phencyclidine ("PCP") and heroin in violation of 21 U.S.C. § 846. D.E. 1.[3] Edwards first name is actually Johnnie. Michael Gilberti, Esq., was retained to represent both Petitioner and Edwards. As to the joint representation, the magistrate judge held an attorney conflict hearing on February 20, 2013. D.E. 52. Both Petitioner and Edwards were sworn, both were asked questions concerning the potential conflict of interests, and both waived any conflict thereby permitting Gilberti to continue to represent both. *Id.*

A nine-count indictment was then returned against Petitioner, charging him the following: Count One - conspiracy to distribute heroin and PCP; Counts Two through Four, Six, Eight, and Nine - distribution of heroin; Count Five - distribution of heroin and PCP; and Count Seven – distribution of PCP. D.E. 61. Count One was brought pursuant to 21 U.S.C. § 846; the remaining Counts were pursuant to 21 U.S.C. § 841. *Id.* Petitioner and the Government thereafter entered into a plea agreement in which Petitioner agreed to plead guilty to the first count and the Government agreed to dismiss the remaining counts. D.E. 64 ("Plea Ag."). The parties also agreed to certain stipulations, which were not binding on the Court. *Id.* at 7-9. The Government reserved its right to argue that Jenkins was a career offender pursuant to U.S.S.G. § 4B1.1(a), and Jenkins

---

[2] Judge Walls indicated that a hearing was required as to Jenkins' ineffective assistance counsel claim concerning his appeal. D.E. 35. After having thoroughly reviewed the record, the Court disagrees. The record contains all necessary information to resolve the issue.

[3] The docket entry citations in this section are taken from the criminal case, 2:13-cr-00646.

reserved his right to argue against such a finding. *Id.* at 8. The parties agreed that Jenkins' Guideline level would be 23 unless Section 4B1.1(a) applied, in which case it would be 31. *Id.* Jenkins stipulated that he would waive his right to appeal or seek collateral relief, including through a Section 2255 motion, if he was sentenced to a Guideline level of 31 or lower. *Id.* The Government agreed to an appeal waiver if Jenkins was sentenced to a level 23 or higher. *Id.*

Petitioner then pled guilty before Judge Walls on October 29, 2013. D.E. 73 ("Plea Tr."). Gilberti represented Petitioner. *Id.* at 2. Judge Walls questioned Jenkins extensively as to the potential conflict of interest concerning Mr. Gilberti and Gilberti's concurrent representation of Edwards. *Id.* at 2-3, 5-11, 32-33. Petitioner first stated that he knew he had the right counsel with undivided loyalty. *Id.* at 6. Petitioner acknowledged that he knew that Gilberti also represented Edwards. *Id.* Petitioner indicated that he was aware that his defenses could conflict with those of Edwards. *Id.* at 7. Judge Walls also informed Petitioner that Gilberti's co-representation could adversely affect his (Petitioner's) ability to cooperate. *Id.* at 7-8. Judge Walls added that no one – not the Court, not the Government, and not Gilberti – could foresee all conflicts that could arise. *Id.* at 8. Petitioner also stated that he was aware that he could consult with another attorney about Gilberti's potential conflict of interest and that Petitioner did not wish to do so. *Id.* at 9. Judge Walls stated that the Court would appoint independent counsel for Petitioner to consult with if Petitioner could not afford to do so. *Id.* at 9-10. Jenkins confirmed that he was satisfied with Gilberti's representation and that he wanted to proceed with Gilberti even though Gilberti also represented Edwards. *Id.* at 10.

Judge Walls also reviewed the potential statutory penalties, including the statutory mandatory minimum sentence. *Id.* at 14. Judge Walls then turned to the plea agreement, including the parties' stipulations. *Id.* at 16-25. Judge Walls reviewed that if Jenkins was determined to be

a career offender under Section 4B1.1, then Jenkins faced a Guideline level of 31. *Id.* at 21-23. Judge Walls ensured that Jenkins understood his waiver of appeal and waiver to seek post-conviction relief. *Id.* at 23-24. In providing his factual basis, Jenkins admitted to the following drug distributions from May 31 through September 12, 2012: 5 bricks of heroin (with a brick containing approximately 50 glassine envelopes of heroin) on June 7th; an additional 250 glassine envelopes of heroin on June 7th; four small glass jars of PCP on June 14th; 15 "yams" of raw heroin on June 14th; 11 bricks of heroin and 3 bottles of PCP on June 26th; 14 bricks of heroin on July 18th; PCP on July 23rd; 20 bricks of heroin on August 29th; and 28 bricks of heroin on September 10th. *Id.* at 26-29.

Jenkins was sentenced on March 11, 2014. D.E. 72 ("Sent. Tr."). The Presentence Investigation Report determined that Jenkins was a career offender pursuant to U.S.S.G. § 4B1.1(a), resulting in a Guideline level of 31. *Id.* at 2. Judge Walls then reviewed Jenkins' prior criminal convictions. *Id.* at 4-9. Jenkins had three prior convictions for violating N.J.S.A. § 2C:35-7, distributing a controlled dangerous substance within 1,000 feet of a school property. *Id.* at 5-6, 8. All three qualified as prior offense under Section 4B1.1(a). *Id.* at 22-25. Gilberti did not challenge the actual convictions, but argued that the severity of Jenkins' criminal history was overstated because the drug distributions involved a relatively low amount of illicit drugs. *Id.* at 10-13. Judge Walls disagreed, noting that Jenkins had been given numerous opportunities at rehabilitation over the years and finding that drug dealing was a serious offense. *Id.* at 12, 15, 27. As a result, Judge Walls found that Section 4B1.1(a) applied and that Jenkins' Guidelines' level (after deducting three points for acceptance of responsibility) was 31 with a criminal history category of VI. *Id.* at 29. Judge Walls then sentenced Jenkins to 188 months, which was the bottom of the Guidelines' range. *Id.* at 37.

Despite the fact that Jenkins' was sentenced within the range stipulated to in his plea agreement, and despite his waiver of appeal, Jenkins filed a handwritten notice of appeal on March 14, 2014. D.E. 70. It appears that the Third Circuit treated the notice as proper and timely filed.

## B. Petitioner's Appeal – Third Circuit No. 14-1825

After Jenkins' *pro se* notice of appeal, the Third Circuit appointed Gilberti to continue to represent Jenkins on appeal and ordered Gilberti on several occasions to enter an appearance on Petitioner's behalf and to take certain actions. D.E. 2, 6, 8.[4] Gilberti wrote an April 28, 2014 letter to the Circuit, stating that he was concerned about taking any action contrary to the appeal waiver in Jenkins' plea agreement. D.E. 7. On June 2, 2014, Gilberti did enter a notice of appearance. D.E. 9. Yet, after a prior order and two letters, the Third Circuit ordered Gilberti to show cause as to why he had failed to file the transcript purchase order form. D.E. 10, 12, 14, 15. Gilberti responded that Jenkins' had indicated that he did not want Gilberti as an attorney and that Jenkins' family had purchased the relevant transcripts. D.E. 16.

In September 2014, the Government moved to enforce Jenkins' appellate waiver. D.E. 19, 20. Jenkins followed with a *pro se* motion to dismiss Gilberti and to appoint new counsel. D.E. 23. The Circuit also granted Jenkins additional time to file a *pro se* response. D.E. 25. On October 23, 2014, Jenkins filed a *pro se* response. D.E. 28. Jenkins appeared to argue that Edwards received a benefit from Gilberti's dual representation, while Jenkins did not – specifically, Edwards was not found to be a career offender. *Id.* at 2. Jenkins also seemed to assert that Gilberti

---

[4] The docket entry citations in this section are taken from the Court of Appeals Docket No. 14-1825. The Circuit's docket lists events by date rather than number. As a result, the docket entry cites in this Opinion follow the Circuit's docket in numerical order.

developed a conflict of interest because Edwards was permitted to cooperate but Jenkins was not. *Id.* at 2-3.

On December 29, 2014, the Third Circuit granted the Government's motion to enforce the appellate waiver and for summary affirmance. D.E. 29. The Circuit also granted Gilberti's motion to withdraw as counsel but denied Jenkins' motion to appoint new counsel. *Id.* Jenkins then petitioned for a rehearing *en banc*, which was denied on January 13, 2015. D.E. 30, 31.

### C. Edwards' Criminal Case – Crim. No. 13-715

Johnnie Edwards agreed to plead guilty to an information, charging him with a conspiracy to distribute heroin and PCP in violation of 21 U.S.C. § 846. D.E. 64.[5] Edwards also entered into a plea agreement with the Government. D.E. 68. Edwards' plea agreement also contained certain stipulations, which were not binding on the Court. *Id.* at 7-9. The parties agreed that Edwards' total Guidelines' level was 19. *Id.* at 8. Moreover, Edwards agreed to waive his right to appeal and to seek post-conviction relief if he was sentenced at a level 19 or lower, while the Government gave up its right to appeal if he was sentenced at that level or higher. *Id.* Edwards then pled guilty before Judge Walls on October 29, 2013. D.E. 66.

Judge Walls sentenced Edwards on March 11, 2014. D.E. 77 ("Edwards Sent. Tr.). The Presentence Report also found a Guideline level of 19 and a criminal history category of V, resulting in a Guideline range of 57-71 months. *Id.* Gilberti did not contest the prior convictions, but argued that Edwards' criminal history was overstated due to the remoteness of his prior felony convictions. *Id.* at 3, 5, 8, 10-11. Gilberti requested that Edwards' criminal history be reduced by one category, to IV. *Id.* at 5. The Government strenuously opposed the motion. *Id.* at 5-7. Based on the nature of his prior convictions, Edwards was not facing a career offender enhancement

---

[5] The docket entry citations in this section are taken from the criminal case, 2:13-cr-00715.

under U.S.S.G. § 4B1.1(a). *Id.* at 11. Ultimately, Judge Walls granted Gilberti's motion, finding that the prior convictions were remote and decreasing Edwards' criminal history by one category. *Id.* at 12. As a result, Edwards faced a Guidelines' range of 46 to 57 months. *Id.* at 13. The Government did not make a motion for a reduced sentence based on substantial assistance under U.S.S.G. § 5K1.1; no mention of any assistance (much less substantial assistance) was made during the sentencing, Judge Walls did not grant a lower sentence for substantial assistance, and Gilberti did not argue that Edwards should receive a lower sentence based on a comparison with Petitioner. The Government requested the high end of the Guidelines' range, 57 months, but Judge Walls sentenced Edwards to 48 months. *Id.* at 25, 29.

### D. Section 2255 Motion

Petitioner filed his initial motion on March 24, 2015. D.E. 1. Petitioner thereafter filed numerous supplemental documents, which either expanded on his initial request, raised new grounds for relief, or replied to the Government's opposition. D.E. 6, 17, 18, 20, 23, 26, 29 The Government filed numerous oppositions. D.E. 4, 22, 33. On October 19, 2018, Judge Walls determined that a hearing was required on Petitioner's ineffective assistance of counsel claim as to Petitioner's direct appeal. D.E. 35. Judge Walls also appointed counsel for Petitioner. *Id.* Petitioner's counsel then submitted a supplemental brief on April 22, 2019, D.E. 39, and the Government responded, D.E. 41.

On July 18, 2019, the matter was transferred to the undersigned. D.E. 42. Thereafter, the Court held a telephone conference with counsel and issued an Order, D.E. 45, 46. Among other things, the Court permitted Petitioner's counsel to submit one omnibus brief that consolidated the numerous and various bases for relief that Petitioner previously asserted on various dates.

Petitioner's counsel then submitted an omnibus brief, D.E. 47; the Government filed opposition, D.E. 49; and Petitioner replied, D.E. 50.

Petitioner's arguments, and the Government's responses, are discussed below.

## II.     Standard

Section 2255 provides in relevant part as follows:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
> . . .
> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>     (1) the date on which the judgment of conviction becomes final;
>     (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>     (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>     (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. *See also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (observing that Section 2255 relief is only available when the error, among other things, was a "'fundamental defect which inherently results in a complete miscarriage of justice'" (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974))).

Among other things, Petitioner asserts ineffective assistance of counsel. Claims of ineffective assistance of counsel are governed by the standard set forth in the Supreme Court's

opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner bears the burden of demonstrating, first, "that counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). The "proper standard . . . is that of 'reasonably effective assistance'" in determining whether counsel's performance was deficient under *Strickland. Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" based on the particular facts of a petitioner's case, viewed as of the time of the counsel's challenged conduct. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

A petitioner must also show prejudice. Pursuant to *Strickland*, a habeas petitioner must also demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.

To be clear, the Sixth Amendment right to effective assistance of counsel extends beyond trial to other facets of criminal proceedings, such as sentencing. *United States v. Sepling*, 944 F.3d 138, 144 (3d Cir. 2019) (citing *Glover v. United States*, 531 U.S. 198 (2001)). The right to

effective assistance of counsel also extends to an attorney's advice as to entering a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also Missouri v. Frye*, 566 U.S. 134, 140 (2012); *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).

A court reviewing a habeas petitioner's claim of ineffective assistance of counsel need not determine whether counsel's performance fell below an objective standard of reasonableness before addressing whether the defendant was prejudiced by counsel's errors. *Strickland,* 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### III. Analysis

Petitioner raises the following grounds in support of his motion: (1) ineffective assistance of counsel (a) based on joint representation of Edwards and Petitioner, (b) for failure to obtain an independent calculation of the drug quantity, and (c) as to Petitioner's appeal, as well as (2) improper sentencing as a career offender under the Guidelines. Br. at 4-6. The Government responds that Jenkins was properly deemed a career offender and that he has not shown ineffective assistance of counsel in any of the cited areas. Opp. at 2-5. The Court will address the ineffective assistance arguments first.

### A. Ineffective Assistance of Counsel Claims

As to the drug quantity argument, the Court sees no basis for relief. Petitioner does not provide any evidence that his drug calculations were wrong. Moreover, the record reflects that on April 30, 2013, the Government sent Gilberti laboratory reports for the narcotics seized in the case. D.E. 4-2 at 2-33. In addition, in his October 3, 2013 plea agreement, Petitioner stipulated to the amount of heroin and PCP. Finally, during his plea allocution, Petitioner admitted under oath to

his numerous distributions of PCP and heroin. The Court does not find that Gilberti's performance

was deficient or that Petitioner was improperly prejudiced. The Court denies relief on this basis.

Turning to Petitioner's claim of ineffective assistance due to Gilberti's dual representation

of Petitioner and Edwards, the Third Circuit has observed the following:

> A petitioner claiming a conflict of interest must "prove (1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected the lawyer's performance." *Sullivan v. Cuyler*, 723 F.2d 1077, 1084 (3d Cir. 1983). The "critical inquiry is whether counsel actively represented conflicting interests." *Gov't of V.I. v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984) (internal quotation marks omitted). There must be a point where "the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *Sullivan*, 723 F.2d at 1086. This could result from refusing to cross-examine a witness, failing to respond to inadmissible evidence, or failing to "diminish the jury's perception of a [co-conspirator's] guilt." *Cuyler v. Sullivan*, 446 U.S. 335, 349, (1980). A petitioner can also show that the attorney failed to pursue an alternative strategy that "(a) could benefit the instant defendant and (b) would violate the attorney's duties to the other client." *United States v. Morelli*, 169 F.3d 798, 811 (3d Cir. 1999) (emphasis omitted). Such an alternative strategy need not "have been successful if it had been used" but must have "possessed sufficient substance to be a viable alternative." *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir. 1985)).

*Simon v. Gov't of the Virgin Islands*, 928 F.3d 118, 129-30 (3d Cir. 2019) (alteration in original)

(footnote omitted). The Sixth Amendment requires an attorney to avoid conflicts of interest in

order to meet counsel's duty of loyalty to his client. *Strickland*, 466 U.S. at 688. Federal Rule of

Criminal Procedure 44(c) sets forth the appropriate inquiry that a court should make when faced

with joint representation in a matter.

However, a client faces a substantial hurdle in claiming ineffective assistance when the

client was expressly warned, and acknowledged, the risks that accompany joint representation.

For example, in *United States v. Santarelli*, 604 F. App'x 164 (3d Cir. 2015), the defendant, Victor,

claimed that his counsel's joint representation violated his Sixth Amendment right to counsel. In rejecting the defendant's claim, the Third Circuit pointed to the following:

> At arraignment, the Magistrate Judge warned each defendant of the dangers of joint representation by citing potential conflicts of interest and giving an example of how Victor's lawyer might "have to cross-examine or question [him] not in [his] best interest, but in the best interest of another person, as well as supposedly represent [him]." App. 33. The judge then confirmed, through questioning, that Victor understood the risks. Victor stated he wanted to proceed with the joint representation and also that he understood he would "be ultimately waiving or giving up [his] right to at any point in the future say that [his] case should be dismissed or reversed . . . based upon the fact that [his] counsel had a conflict in that he represented someone else in the case." App. 34–35. No further warning was necessary.

*Id.* at 167 (alterations in original) (footnote omitted). Here, the record demonstrates that both the Magistrate Judge and Judge Walls notified Petitioner of his right to conflict free counsel, warned Petitioner of the risks associated with joint representation, and found that Petitioner waived his rights as to joint representation. In fact, not only did Judge Walls discuss the potential conflict issue at length with Petitioner, Judge Walls also offered to appoint Petitioner independent counsel to discuss the potential conflict issue. Petitioner declined. Petitioner also acknowledged that no person involved could predict with any certainty the potential conflicts that could arise. Petitioner was appropriately advised of his right to counsel free from potential conflict, Petitioner understood his right, and petitioner waived his right in that regard.

While Petitioner does not challenge that he was provided appropriate warnings, he nevertheless claims that an actual conflict arose in Gilberti's joint representation. As best as the Court can discern, Petitioner appears to be arguing that part of his plea agreement included an acknowledgement that Edwards would be sentenced to the same amount of time as Petitioner. D.E. 1 at 24-25. He also seems to claim that he reserved his right to appeal if Edwards' sentence

was reduced due to cooperation. *Id.* at 26-27. The Court finds that Petitioner's claims have no evidential support. First, Petitioner's plea agreement unequivocally indicates that it is only between him and the Government. Plea Ag. at 1. The plea agreement does not mention Edwards or indicate in any manner that Petitioner's agreement was in any way contingent on Edwards. *Id.* at 1-9. The plea agreement continues that "[n]o additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties." *Id.* at 5. Moreover, Petitioner expressly acknowledged in the agreement that "I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties." *Id.* at 6. Additionally, throughout his plea hearing and sentencing hearing, Petitioner never indicated that he had an additional understanding with the Government as to Edwards. *See* Plea Tr.; Sent. Tr. In fact, Petitioner affirmatively stated that he had been made no other promises, other than what was discussed with Judge Walls during the plea hearing, as to his plea deal. Plea Tr. at 26. There is no evidence to support Petitioner's claim that his sentence was to be tied to the one received by Edwards. Instead, the record demonstrates the exact opposite.

As to Petitioner's claim concerning Edwards' cooperation, there is no evidence that Edwards' cooperated with the Government. The Government did not make a motion for a downward departure based on substantial assistance, Mr. Gilberti did not argue substantial assistance, and Judge Walls did not reduce Edwards' sentence based on cooperation. Instead, Mr. Gilberti argue for a one-level reduction in Edwards' criminal history due to the remoteness of Edwards' prior convictions, and Judge Walls agreed over the Government's strenuous objections. Judge Walls did not grant Edwards any sentencing benefit at the expense of Petitioner. Although Petitioner claims that he and Edwards were similarly situated, Edwards did not qualify for a career

offender enhancement (like Petitioner did) because of his criminal history. Moreover, as the Government acknowledges, its evidence as to Edwards was more limited when compared to that of Petitioner, resulting in a lower drug quantity attributable to Edwards. D.E. 4 at 20. Petitioner has not pointed to any evidence concerning an actual conflict involving Mr. Gilberti. Petitioner's motion is denied on this ground.

Finally, Petitioner argues that Gilberti was ineffective as to Petitioner's direct appeal. A recent Supreme Court decision, *Garza v. Idaho*, 139 S. Ct. 738 (2019), is instructive. Garza signed two plea agreements concerning state criminal charges; in both he waived his right to appeal. *Id.* at 742. After sentencing, Garza repeatedly informed his attorney that he wanted to appeal, but the attorney did not file notices of appeal due to the plea waivers. *Id.* at 743. In fact, no timely notices of appeal were ever filed. *Id.* Thereafter, Garza filed for postconviction relief, arguing that his attorney was ineffective for failing to file the notices of appeal. *Id.*

The Court in *Garza* first found that "[w]here, as here, a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Id.* at 746. Critically, the Court continued, the Supreme Court also found that the presumption of prejudice applies in such situations:

> [W]e reaffirm that, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal," with no need for a "further showing" of his claims' merit, *[Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)], regardless of whether the defendant has signed an appeal waiver.

*Id.* at 747. The remedy in such situations, the Court concluded, was to provide the defendant with a new opportunity to appeal. *Id.* at 749.

Here, the Court concludes because Petitioner did in fact exercise his right to appeal, *Garza* does not provide relief to him in his current motion. While the Court can understand Gilberti's trepidation in filing a notice of appeal in light of Petitioner's waiver (lest Gilberti be accused of breaching the agreement), the Supreme Court found that filing such a notice is "purely a ministerial task" and is "generally speaking, a simple nonsubstantive act that is within the defendant's prerogative." *Id.* at 745, 746 (citation omitted). But, unlike the defendant in *Garza*, here Petitioner did file a timely notice of appeal on his own.

Not only did Petitioner file a timely notice of appeal, but he also received a substantive ruling from the Third Circuit. One of the reasons the Supreme Court cited in support of its decision is that appeal waivers are only enforceable as to issues within the scope of the waiver itself. *Id.* at 744. Moreover, the *Garza* Court continued, the government could also decide to forfeit its rights under the waiver. *Id.* at 745. Finally, the Court in *Garza* ruled that the remedy for counsel's failure to file a notice of appeal, is merely to permit a defendant to appeal. Here, Petitioner had his appeal heard, and the Third Circuit conclusively decided that his plea agreement's appellate waiver applied. There is nothing left for the Circuit to determine. Petitioner's motion is denied on these grounds.

### B. U.S.S.G. § 4B1.1(a) - *Chang-Cruz v. Attorney General*, 659 F. App'x 114 (3d Cir. 2018)

Petitioner argues that the Third Circuit's ruling in *Chang-Cruz v. Attorney General*, 659 F. App'x 114 (3d Cir. 2018), indicates that the career offender provision in U.S.S.G. § 4B1.1(a) was improperly applied. *Br.* at 5. Specifically, Petitioner argues that his prior convictions under N.J.S.A. § 2C:35-7 should not have been considered. *Id.* The Government responds *Chang-Cruz* is not applicable. Opp. at 2. In support, the Government also points to the Third Circuit's decision *United States v. Lampley*, 723 F. App'x 152 (3d Cir 2018). Opp. at 3.

U.S.S.G. § 4B1.1(a) provides that a defendant is a career offender if, among other things,

he has at least two prior convictions for a "controlled substance offense." U.S.S.G. § 4B1.1(a). A

"controlled substance offense" is defined in the following manner under the guidelines:

> [A]n offense under federal or state law, punishable by imprisonment
> for a term exceeding one year, that prohibits the manufacture,
> import, export, distribution, or dispensing of a controlled substance
> (or a counterfeit substance) or the possession of a controlled
> substance (or a counterfeit substance) with intent to manufacture,
> import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

The underlying state statute at issue is N.J.S.A. § 2C:35-7, which provides in relevant part

as follows:

> Any person who violates subsection a. of N.J.S. 2C:35-5 by
> distributing, dispensing or possessing with intent to distribute a
> controlled dangerous substance or controlled substance analog
> while on any school property used for school purposes which is
> owned by or leased to any elementary or secondary school or school
> board, or within 1,000 feet of such school property or a school bus,
> or while on any school bus, is guilty of a crime of the third degree
> and shall, except as provided in N.J.S. 2C:35-12, be sentenced by
> the court to a term of imprisonment.

N.J.S.A. § 2C:35-7(a). N.J.S.A. § 2C:35-5(a), in turn, makes it unlawful for a person knowingly

or purposely "[t]o manufacture, distribute or dispense, or to possess or have under his control with

intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled

substance analog" or "[t]o create, distribute, or possess or have under his control with intent to

distribute, a counterfeit controlled dangerous substance." N.J.S.A. § 2C:35-5(a).

In *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016), the petitioner pled guilty to being

a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), which carried a ten-year

statutory maximum. 136 S. Ct. at 2248, 2250. He was thereafter sentenced to a fifteen-year

mandatory minimum under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). *Id.*

The ACCA applied to a person with three prior convictions for a "violent felony," including burglary, arson, or extortion. *Id.* at 2247-48.

The *Mathis* Court explained that burglary, arson, and extortion under the ACCA applied only to the offenses' "generic versions" rather than all variations. *Id.* at 2248 (citing *Taylor v. United States,* 495 U.S. 575, 598 (1990)). For burglary, the Supreme Court continued, the generic version was an offense "'containing the following elements: an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime.'" *Id.* (quoting *Taylor,* 495 U.S. at 598). The Supreme Court instructed that in determining whether a prior conviction met generic burglary, a court should apply the "categorical approach," meaning solely reviewing the elements – not facts – of an underlying offense and comparing them with generic burglary. *Id.* at 2248. Yet, the Supreme Court recognized, some statutes list elements in the alternative. *Id.* at 2249. In such cases, the Supreme Court continued, a court must employ the "modified categorical approach," which permits a court to review "a limited class of documents," such as the indictment, jury instructions, plea agreement, or plea colloquy. *Id.* The Court in *Mathis* stated that a court must review the documents to determine which specific crime, and elements, a defendant had been convicted of and then decide if it matched the generic offense. *Id.*

The petitioner in *Mathis* had previously been convicted of burglary in Iowa, and the Iowa statute was broader than generic burglary; the statute covered "any building, structure, [or] land, water, or air vehicle." *Id.* (alteration in original) (quoting Iowa Code § 702.12). The *Mathis* Court noted, however, that the Iowa Supreme Court had already determined that the listed areas were not alternative elements but instead alternative means of meeting a single locational element. *Id.* (citing *State v. Duncan,* 312 N.W. 2d 519, 523 (Iowa 1981)). The difference – element or means – was critical; an element meant that a jury had to unanimously agree that the prosecution had

proven beyond a reasonable doubt the element while means indicated that the jury did not have to unanimously agree as to a particular means so long as they all voted that the prosecution had established the particular element beyond a reasonable doubt. *Id.* at 2253.[6] The Supreme Court concluded that reviewing the means – or facts – of an underlying offense was irrelevant in performing either a categorical or modified categorical review:

> For these reasons, the court below erred in applying the modified categorical approach to determine the means by which Mathis committed his prior crimes. *United States v. Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015). ACCA, as just explained, treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence. And indeed, our cases involving the modified categorical approach have already made exactly that point. "[T]he only [use of that approach] we have ever allowed," we stated a few Terms ago, is to determine "which *element[s]* played a part in the defendant's conviction." *Descamps,* 570 U.S. [254, 263-64 (2013)] (emphasis added); *see Taylor,* 495 U.S. at 602 (noting that the modified approach may be employed only to determine whether "a jury necessarily had to find" each element of generic burglary). In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque. *See Descamps,* 570 U.S. at [263-64]. It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.

*Id.* at 2253-54 (footnote omitted).[7]

---

[6] The Supreme Court used the example of a statute prohibiting the use of a "deadly weapon," indicating that knife or gun would qualify. *Mathis*, 136 S. Ct. at 2249 (citations omitted). The element – a deadly weapon – would have to be proven beyond a reasonable doubt and unanimously agreed to by the jury for conviction, but the jury would not have to be unanimous as to the means – some could conclude that a gun was used while others could agree that a knife was used. *Id.* (citations omitted).

[7] The *Mathis* decision was a plurality opinion. Justice Kennedy concurred, asserting that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) was incorrect. *Id.* at 2258 (Kennedy, J., concurring). Justice Thomas also concurred, stating that "I continue to believe that depending on judge-found facts in

In *Chang-Cruz*, a non-precedential opinion from the Third Circuit, Chang-Cruz was from Ecuador and entered the United States in 1987. *Chang-Cruz v. Attorney General*, 659 F. App'x 114 (3d Cir. 2018). He thereafter pled guilty to two violations of N.J.S.A. § 2C:35-7(a). *Id.* Immigration authorities later informed Chang-Cruz that he was removable because Section 2C:35-7(a) violations "involved a controlled substance, *see* 8 U.S.C. § 1227(a)(2)(B)(i), and [were] aggravated felonies—namely, offenses involving drug trafficking, *see* 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii)[.]" *Id.* After reviewing the transcripts from Chang-Cruz's criminal plea colloquy, the immigration judge concluded that Chang-Cruz had been convicted of aggravated felonies and was therefore ineligible for cancellation of removal; the Board of Immigration Appeals affirmed. *Id.* at 115-16.

The Third Circuit reversed. The Circuit began by indicating that 8 U.S.C. § 1101(a)(43)(B) included as an aggravated felony a "drug trafficking crime" under 18 U.S.C. § 924(c), which include a felony punishable under the Controlled Substances Act. *Id.* at 116. As a result, the Third Circuit continued, Chang-Cruz's convictions fell under the "hypothetical federal felony" category set forth in *Avila v. Attorney General*, 826 F.3d 662, 667 (3d Cir. 2016). *Id.* at 117. The *Chang-Cruz* court then discussed the categorical and modified categorical approaches to review. *Id.* (citing *Mathis*, 136 S. Ct. at 2254 & n.4; *Moncrieffe v. Holder*, 569 U.S. 184 (2013)) (other citations omitted).

Following *Mathis*, the Third Circuit concluded that resolution depended on whether "distribution" and "dispensing" in N.J.S.A. § 2C:35-7(a) comprised alternative elements or alternative means. *Id.* at 117-18. The court in *Chang-Cruz* decided that "distribution" and

---

Armed Career Criminal Act (ACCA) cases violates the Sixth Amendment and is irreconcilable with *Apprendi*." *Id.* at 2259. (Thomas, J., concurring).

"dispensing" were alternative means rather than elements.[8] *Id.* The Third Circuit also determined

that due to the ambiguity in § 2C:35-7(a), it was unable to "satisfy the 'demand for certainty'" that

Chang-Cruz had actually been convicted of a "generic federal offense." *Id.* (quoting *Mathis*, 136

S. Ct. at 2257). Thus, the Circuit determined that Chang-Cruz had not been convicted of an

aggravated felony. *Id.*

Petitioner argues that in light *Chang-Cruz*, his prior convictions for violating § 2C:35-7(a)

cannot be considered "controlled substance offenses" under U.S.S.G. § 4B1.1(a). The Court

disagrees for two reasons. The first is textual. Here, Section 4B1.2(b) includes both "distributing"

and "dispensing." In *Lampley*, the Third Circuit confronted the same argument and distinguished

*Chang-Cruz* on this basis: "[T]here can be no doubt that Lampley's conviction under the New

Jersey statute[, N.J.S.A. § 2C:35-7(a)], is a categorical match to its federal counterpart[, U.S.S.G.

§ 4B1.2(b)], as both cover conduct related to 'dispensing' and 'distributing.' As such, Lampley

was properly qualified as a career offender for sentencing purposes." 723 F. App'x at 154. *See*

*also Jackson v. United States*, Civ. No. 17-4707, 2018 WL 4828409, *2 (D.N.J. Oct. 4, 2018)

(finding that "the federal and state definitions match" when comparing N.J.S.A. § 2C:35-7(a) and

U.S.S.G. § 4B1.2(b)). By comparison, the ACCA did not define "burglary, arson, or extortion[.]"

18 U.S.C. § 924(e)(2)(B)(ii), so the Supreme Court had to consider "generic versions" of each

offense, meaning the offense as they were understood at common law. Similarly, the federal

statutes at issue in *Chang-Cruz* prohibited distribution but were silent as to dispensing.

Second, Petitioner's request is based on an argument concerning *guideline* application

rather than *statutory* interpretation. Petitioner's sentence here did not expose him to imprisonment

---

[8] The Circuit did not identify the element in § 2C:35-7(a) to which the means of distribution or
dispensing applied.

above the statutory maximums of the charges to which he pled, as was the case in *Mathis*. The Court reaches this conclusion in light of the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017). Before *Beckles*, the Supreme Court had decided in *Johnson v. United States*, 135 S. Ct. 2251 (2017) that the residual clause in the ACCA defining "crime of violence," 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. In *Beckles*, the Supreme Court confronted an identical definition of "crime of violence" as the definition in U.S.S.G. § 4B1.2(a)(2). 137 S. Ct. at 890. The Court in *Beckles* observed that "our cases have never suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered." *Id.* at 893. The Supreme Court concluded that "[b]ecause they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge." *Id.* at 894. Thus, it is difficult for this Court to conclude that Petitioner is entitled to relief when Section 4B1.2 expressly includes the language at issue in N.J.S.A. § 2C:35-7(a), while another criminal defendant would not be so fortunate if he challenged language in the same guideline section concerning a "crime of violence" even though the precise language had been found unconstitutionally vague when used in a federal criminal statute.

As a result, the Court concludes that Petitioner is not entitled to relief under *Chang-Cruz*.

Because Petitioner's motion "and the files and records of the case conclusively show that [Petitioner] is entitled to no relief," a hearing is not necessary in this matter. 28 U.S.C. § 2255(b). In addition, no certificate of appealability will issue because Petitioner has not made the requisite showing. 28 U.S.C. § 2253(c)(2).

## IV.    Conclusion

For the foregoing reasons, Petitioner's motion for relief under 28 U.S.C. § 2255 is denied

and a certificate of appealability shall not issue.  An appropriate Order accompanies this Opinion.

Date:    January 29, 2020

HON. JOHN M. VAZQUEZ,
United States District Judge